**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Pedro MARTINEZ (91–1908) and Virginia Escamilla (91–2131), Defendants–Appellants.**

**Nos. 91–1908, 91–2131.**

United States Court of Appeals, Sixth Circuit.

Submitted Sept. 22, 1992.

Decided Dec. 9, 1992.

Kathleen Moro Nesi, Asst. U.S. Atty. (briefed), Detroit, MI, Michael Hluchaniuk, Asst. U.S. Atty., Bay City, MI, for U.S.

William A. Brisbois (briefed), Brisbois & Brisbois, Saginaw, MI, for Pedro Martinez.

Robert J. Dunn (briefed), Bay City, MI, for Virginia Escamilla.

Before: JONES and SILER, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Defendant Virginia Escamilla ("Escamilla") was convicted of two counts of aiding and abetting the sale of a controlled substance. Pedro Martinez ("Martinez") was convicted of one count of aiding and abetting the sale of a controlled substance and

for possession of an unregistered firearm. Both now appeal their convictions, alleging that the trial judge committed numerous errors that require reversal. For the reasons stated below, we affirm their convictions.

## I

The convictions of Escamilla and Martinez arose out of a series of drug transactions with an undercover police officer. The transactions began in late February of 1990, and ended in December of 1990 with the arrest of several of the individuals involved, including Martinez and Escamilla. We only recount the facts that are relevant to the convictions of Escamilla and Martinez.

### A

### The Case Against Escamilla

On February 21, 1990, a confidential informant introduced Detective Michael Winters of the Michigan State Police to Sam Zapata. Winters, who was operating undercover, made several purchases of cocaine from Zapata during late February and early March, 1990.

On March 13, 1990, Winters and Zapata met in a bar in Saginaw, Michigan. Winters told Zapata that he would like to purchase a gram of heroin. Defendant Escamilla was present, seated next to Zapata. Zapata said that he did not have any heroin with him. Zapata turned to Escamilla and asked her to go to Zapata's sister's house to get a package of heroin for him. Escamilla agreed to get the heroin, and left the bar driving Zapata's car. Escamilla returned about fifteen minutes later carrying a small package, which she handed to Zapata. Zapata and Winters went into the men's rest room, and Zapata took out the same package that Escamilla had delivered to him. The package contained a brown, sticky substance that Zapata identified as heroin, but later testing indicated that the substance actually contained morphine and

6–monoacetylmorphine, which is an incomplete processing of heroin.[1] Winters paid Zapata $200 for the package, and the two men returned to the bar area. Escamilla was convicted on Count 6 of the indictment for distributing and aiding and abetting the distribution of morphine for her part in this transaction.

Escamilla's second conviction arose out of a series of events that occurred on the evening of June 14, 1990. That evening, Winters, Escamilla, and Zapata met at Hoyt Park in Saginaw to complete a heroin transaction that Zapata and Winters had arranged two days earlier. Before the transaction was completed, Zapata noticed some police in the area, so he recommended that they leave the park. Winters agreed, and he and Zapata left in Winters' car, and Escamilla left in Zapata's car. Escamilla and Winters took separate routes when they left the park, regrouping at Escamilla's apartment.

When Zapata and Winters arrived at Escamilla's apartment, Zapata went inside and got a package of heroin from under a mattress in her bedroom. Winters waited outside the apartment until Zapata told him to come into the kitchen, where Escamilla and Zapata were standing. Winters demanded that Zapata weigh the drugs, so Zapata obtained a triple beam scale from another room in the apartment. When Winters was satisfied that the weight was correct, he paid Zapata $2,200. Zapata counted his money and thought that he had been underpaid. However, Escamilla, who had been watching him count the money, noticed the error and pointed it out to him. Escamilla was convicted on Count 12 of the indictment for her part in the sale and in aiding and abetting the sale of heroin.

Escamilla was also charged with conspiracy to distribute cocaine and heroin, but she was acquitted of this charge.

### B

### The Case Against Martinez

Martinez was not present at any of the drug transactions between Winters and Za-

---

**1.** Heroin and 6–monoacetylmorphine are manufactured from the morphine compound. The technical name of heroin is dimonoacetylmor-

phine. Acetyl chlorine is used to convert morphine into 6–monoacetylmorphine and into heroin. Tr. 4/10/91 at 141–42.

pata until October of 1990. However, Zapata testified that Martinez had been supplying him with heroin since February of 1990. In late October he finally did appear at a transaction at another bar in Saginaw where Zapata sold Winters an ounce of heroin. At that sale, Zapata told Winters that Martinez was Zapata's source for heroin. Martinez was indicted for his part in this transaction, but was acquitted. He was, however, convicted for aiding and abetting a transaction that occurred on December 5, 1990.

On that occasion, Zapata planned to sell Winters an ounce of heroin that Martinez had supplied to him. Because the brakes in Zapata's car were faulty, Zapata had no way to get to Winters' apartment, so Martinez agreed to drive him there. Martinez waited in the car while Zapata made the sale. After the transaction was completed, the two men drove away together in Martinez' car, and a few minutes later, Zapata divided the money with Martinez. Martinez was identified shortly after he left the scene by another undercover police officer conducting surveillance.

On December 19, 1990, law enforcement officers executed a search warrant at Martinez' home and recovered a triple beam scale, a small amount of heroin, some manitol, some marijuana seeds, and an unregistered .410 gauge shotgun with a barrel measuring less than eighteen inches in length. Martinez was indicted for his part in the December 5th transaction and for possession of the sawed-off shotgun. He was convicted on both counts.

II

Escamilla first argues that the district court unduly restricted voir dire by refusing to ask a question that defense counsel requested: whether the prospective jurors' relationships with police officers would cause them to favor the testimony of a police officer if the officer's testimony conflicted with the testimony of a civilian. The court refused to ask this question because it felt that the question might "invite potentially prejudicial comments from pro-

spective jurors in the presence of other panel members." Tr. 3/25/91 at 125.

District judges have a great deal of discretion to determine the questions to ask potential jurors during voir dire. Fed. R.Crim.P. 24(a); *United States v. Anderson,* 562 F.2d 394, 397 (6th Cir.1977). The court's determination of the questions to ask "will not be disturbed without a clear showing of abuse of discretion." *United States v. Blount,* 479 F.2d 650, 651 (6th Cir.1973). However, since the purpose of voir dire is "to allow for the impaneling of a fair and impartial jury through questions which permit the intelligent exercise of challenges by counsel," *Anderson,* 562 F.2d at 398, the court abuses its discretion if it restricts the scope of voir dire in a manner that unduly impairs the defendant's ability to exercise his peremptory challenges or make his challenges for cause. *United States v. Johnson,* 584 F.2d 148, 155 (6th Cir.1978), *cert. denied, sub nom. Monger v. United States,* 440 U.S. 918, 99 S.Ct. 1239, 59 L.Ed.2d 469, *and cert. denied, sub nom. Morrow v. United States,* 440 U.S. 918, 99 S.Ct. 1240, 59 L.Ed.2d 469 (1979).

Even though the district court did not ask the question proposed by defense counsel, the court used other means to ascertain the attitude of the potential jurors. First, the court asked the panel members whether any of them had a close relationship with law enforcement officials. When one indicated that he or she had such a relationship, the court would ask that person more specific questions to determine whether that relationship would cause him or her to favor either the prosecution or the defense. *See, e.g.,* Tr. 3/25/91 at 84–86. After the court completed this questioning, it instructed the potential jurors that part of their job as jurors was to assess the credibility of witnesses. It further said:

People who are involved in law enforcement do not get any special treatment in Court. They are not automatically entitled, in other words, to be believed simply and purely because they are engaged in law enforcement as a profession.

They are to be listened to, evaluated and judged by the same standards as anyone else, any other witness that comes into Court is expected to be looked at in the same fashion. Now, from those of you who have law enforcement officers as relatives or close friends, I will ask you whether any of you have any difficulty in accepting that as a basic standard and as a guideline of law from the Court. Or, on the other hand, does [sic] any of you continue to feel so tied up with law enforcement because of your relative's or your friend's employment that you think you wouldn't want to follow that instruction, that you would want to give some kind of automatic higher level of belief to people who are involved in law enforcement purely because they have that job?

Tr. 3/25/91 at 92–93. None of the prospective jurors responded. The judge then moved on to other questions.

We believe that this admonition together with the questions posed by the court elicited enough information for defense counsel to exercise intelligently their peremptory challenges and to make their challenges for cause. Accordingly, we find no abuse of discretion in the court's refusal to ask defense counsel's proposed question.

### III

■ Escamilla next argues that the prosecutor improperly vouched for the credibility of Detective Winters in closing argument.

During argument to the jury, counsel for Escamilla said in reference to Winters' testimony:

Touching up the facts, ladies and gentlemen, touching up the facts to get Miss Escamilla involved. Or that's one conclusion you can draw, or you can draw the conclusion that Mr. Winters is simply unreliable as a witness. Not that he's in here because he's going to lie under oath to get Virginia Escamilla in trouble, but he's just simply unreliable.

Tr. 4/23/91 at 182. In his closing argument, the prosecutor responded:

So why would Detective Winters lie about Virginia Escamilla? Is there something that's particularly significant or important about her that he would lie about, that he would risk his career, 18 years in the state police, to come in here and lie about that?

Tr. 4/23/91 at 237. Defense counsel objected to the argument and was overruled.

Escamilla points out that there was no evidence before the court that Winters risked his eighteen-year career if he lied. This, it is argued, is improper vouching. It has been held that "vouching" occurs when counsel, in argument, refers to evidence not in the record, *United States v. Wallace*, 848 F.2d 1464, 1473 (9th Cir.1988), and the government, citing *Wallace*, concedes that this is the law. However, before this court can reverse Escamilla's conviction for a prosecutorial impropriety, we must conclude that the impropriety was so "gross as probably to prejudice the defendant." *United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir.1988).

In this case, we believe that the prosecutor's comment was simply an isolated misstatement. It is unlikely that it prejudiced Escamilla. *See id.; United States v. Thomas*, 728 F.2d 313 (6th Cir.1984). Any possible prejudice that Escamilla might have suffered was ameliorated by the trial court's instruction to the jury that "the lawyers' statements ... and their arguments are not evidence." Tr. 4/23/91 at 260. This instruction was sufficient to neutralize the prosecutor's slight impropriety. *See United States v. Hurst*, 951 F.2d 1490, 1503 (6th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1952, 118 L.Ed.2d 556 (1992). Therefore, we conclude that the district court's ruling was not reversible error.

### IV

Escamilla next argues that both Counts 6 and 12 of the indictment were constitutionally insufficient because neither Count 6 nor Count 12 included the words "knowingly" or "intentionally," and therefore failed to give her sufficient notice of the crimes charged against her. Although it is true that the indictment did not include these

words, we believe that the indictment was sufficient.

▇ To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts. *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962).

▇ We believe that this indictment satisfies the first prong of the *Russell* test. In *United States v. Johnson*, 414 F.2d 22, 26 (6th Cir.1969), *cert. denied*, 397 U.S. 991, 90 S.Ct. 1112, 25 L.Ed.2d 399 (1970), this court held that an indictment sufficiently alleged willfulness by citing the appropriate section of the United States Code. In the case at bar, although the indictment does not expressly allege willfulness, it does allege the appropriate sections of the United States Code. We believe that citation to the statutes informed Escamilla of the elements of the charged offenses. *See also United States v. Arteaga–Limones*, 529 F.2d 1183, 1200 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976) (holding that an indictment sufficiently alleged willfulness by citing the appropriate statute). We also believe that this indictment gave Escamilla adequate notice of the charges against her. Accordingly, we hold that the indictment was constitutionally sufficient.

### V

▇ Escamilla next argues that the district court erred when it failed to grant a judgment of acquittal because of a variance between Count 12 of the indictment

and the evidence offered at trial. Escamilla argues that there was a variance because the caption to Count 12 of the indictment named morphine and 6–monoacetylmorphine as the controlled substances involved, while the body of the count named heroin as the controlled substance.[2]

The district court rejected the defendant's argument, holding that the title was surplusage; that the defendant had shown no prejudice; and that the defendant had not shown lack of notice since the court, and not the defense, discovered the error.

We hold that there was no variance. A variance occurs when the evidence offered at trial differs materially from the charge in the indictment. *United States v. Robison*, 904 F.2d 365, 369 (6th Cir.), *cert. denied, sub nom. Smoot v. United States*, —— U.S. ——, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990). A variance is not reversible error unless the defendant shows prejudice to his defense. *Id.* Here, as the trial court held, there was no variance because the caption to Count 12 was not a necessary part of the charging language of the indictment. The charging language is in the body of Count 12, and it alleges that Escamilla distributed and aided and abetted the distribution of heroin. The evidence adduced at trial proved exactly that.

Even if we did conclude that there was a variance, however, we would not reverse because Escamilla did not demonstrate any prejudice to herself. Accordingly, we conclude that Escamilla's argument is without merit.

### VI

Escamilla next contends that the trial court erroneously denied her motions for a judgment of acquittal based upon insufficiency of the evidence on Counts 6 and 12.

---

2. Count 12 provided as follows:

COUNT 12
(21 USC § 841(a)(1)—Distribution of Morphine and 6–Monoacetylmorphine)
That on or about June 14, 1990, within the Eastern District of Michigan, Northern Division, SAM ZAPATA and VIRGINIA ESCAMILLA, defendants herein, distributed and aided

and abetted each other in the distribution of a quantity of a substance containing a detectable amount of *heroin,* a Schedule II Controlled Substance, *in violation of* Title 21, United States Code, section 841(a)(1) and Title 18, United States Code, section 2.

J.A. at 5 (emphasis added).

■ This court reviews motions for judgments of acquittal based upon insufficiency of the evidence as follows: "viewing the evidence in the light most favorable to the prosecution, is the evidence such that a reasonable mind might fairly find guilt beyond a reasonable doubt." *United States v. Ayotte*, 741 F.2d 865 (6th Cir.), *cert. denied, sub nom. Labadie v. United States*, 469 U.S. 1076, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984). This court must consider all of the evidence "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Further, circumstantial evidence standing alone is sufficient to support a conviction. *United States v. Ashworth*, 836 F.2d 260, 263 (6th Cir.1988). "It is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748 F.2d 361, 363 (6th Cir.1984).

## A

■ With respect to Count 6, we conclude that there is sufficient evidence for the jury to find Escamilla guilty beyond a reasonable doubt. Winters testified that Escamilla was seated next to Zapata while Winters and Zapata negotiated a heroin transaction. The two men agreed to a price, but Zapata did not have the heroin with him. Zapata testified that he asked Escamilla to go to Zapata's sister's house to get the heroin for him. She agreed to go and left the bar driving Zapata's car, returning fifteen minutes later with a small package, which she gave to Zapata. The laboratory results indicated the package contained 6–monoacetylmorphine and morphine. This evidence is sufficient to support her conviction.

■ Escamilla makes a separate argument that the evidence is insufficient to support her conviction because all three of the individuals involved in the transaction thought that the substance involved was heroin rather than morphine and 6–monoacetylmorphine, morphine and 6–monoacetylmorphine being the drugs charged in Count 6. Therefore, she argues, there was insufficient evidence for a jury to find that she knowingly and intentionally distributed morphine and 6–monoacetylmorphine. This argument is meritless. It is irrelevant that by fortuity the substance that she aided and abetted Zapata in distributing actually turned out to be 6–monoacetylmorphine and morphine, the distribution of which is prohibited by 21 U.S.C. § 841(a)(1) (1988). *United States v. Jewell*, 532 F.2d 697, 698 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

From the evidence in the record, we find that the jury could conclude beyond a reasonable doubt that Escamilla aided and abetted the distribution of morphine and 6–monoacetylmorphine in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988). Accordingly, we hold that the Count 6 conviction was supported by sufficient evidence.

## B

Regarding Count 12, the June 14, 1990, transaction, we conclude that the jury could have concluded beyond a reasonable doubt that Escamilla aided and abetted the distribution of heroin. The facts as set out in Part I A of this opinion are amply supported by proof in the record and support our conclusion. Thus, we conclude that the trial court properly denied Escamilla's motion for a judgment of acquittal.

## VII

■ Martinez contends that it was reversible error to admit, by cross-examination of him and by the rebuttal testimony of his former girl friend, Rachel Moore, evidence that he had been a user of cocaine and marijuana and had given some to Moore in the year before the period of the alleged conspiracy. As part of his proof, Martinez offered, prior to his testimony, witnesses who testified that he was a person of good character and was law abiding. It is not completely clear whether the district court admitted the contested cross-examination testimony and rebuttal testimony of Moore under Rule 404(a)(1) or

404(b) or both,[3] or simply because it had a probative connection with the crimes charged. In any event, in view of Martinez' testimony on direct examination and testimony without objection on cross-examination, we believe that any such errors would be harmless.

Martinez testified on direct examination that, during the relevant period, he was convicted of drunk driving, that co-defendant Zapata supplied him with cocaine, and that he used cocaine "quite a bit." Tr. 4/12/91 at 148, 157, 180. He also testified that he obtained heroin from Zapata, tried it, and did not like it, but kept it and that he continued to get cocaine from Zapata. Tr. 4/12/91 at 158. He further testified that the manitol found in his house was used to "cut cocaine" and that marijuana seeds were found there. Tr. 4/12/91 at 158, 171. On cross-examination, Martinez testified without objection at this point, that he gave cocaine and marijuana to his girl friend, Rachel Moore, during the year immediately before the year of the alleged conspiracy. Tr. 4/23/91 at 63.

Since Martinez admitted in his direct testimony that he used cocaine and heroin during 1990, the period of the alleged conspiracy, we believe that it was harmless error, if indeed it was error, to admit testimony that he used cocaine in 1989. We further believe that since Martinez testified, on cross-examination without objection at this point, that he gave cocaine to his girl friend in 1989 and 1990, it was harmless error, if it was error at all, to admit testimony to the same effect by the rebuttal witness, Rachel Moore.

## VIII

Martinez' claim that there was error in the charge to the jury with respect to the conspiracy count, Count 1, is moot because Martinez was found not guilty on Count 1.

## IX

The judgment of the district court is, therefore, AFFIRMED.

---

3. Rules 404(a)(1) and (b) provide:
   **Rule 404. Character Evidence not Admissible to Prove Conduct; Exceptions; Other Crimes**
   **(a) Character evidence generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
   **(1) Character of accused.** Evidence of a pertinent trait of character offered by an accused, or *by the prosecution to rebut the same;*

   .     .     .     .     .

   **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.*
   Fed.R.Evid. 404 (emphasis added).