14 F.3d 598
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Bernard MIDDLETON, a/k/a Cass, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Andrew Dalcosta Hamblin, a/k/a Drew, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
David Anthony Hamblin, a/k/a Dredlock, Defendant-Appellant.
 Nos. 93-5090, 93-5104, 93-5103, 93-5105.
 United States Court of Appeals, Fourth Circuit.
 Dec. 22, 1993.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.
 Alan Jay Cilman, for appellant Middleton.
 Suzanne Little, for appellant Andrew Hamblin.
 Kenneth Norman Brand, Passarelli & Brand, for appellant David Hamblin.
 Denise Jakabcin Tassi, for appellant Armstrong.
 James L. Trump, Assistant United States Attorney, for appellee.
 Julie Marie Strandlie, Passarelli & Brand, for appellant David Hamblin.
 Kenneth E. Melson, United States Attorney, for appellee.
 E.D.Va.
 AFFIRMED.
 Before NIEMEYER and HAMILTON, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 In this consolidated appeal, appellants, Bernard Middleton (Middleton), David Hamblin (David), Andrew Hamblin (Andrew), and Kendrick Armstrong (Armstrong), appeal the judgment entered by the district court in their respective cases. Finding no error, we affirm.
 
 
 2
 * This case involved a conspiracy to distribute cocaine base (crack) in, among other areas, Arlington, Virginia from early 1989 until July 1992. The conspiracy was headed by Middleton, and coconspirators Arnold Edmond and Dale Prescod. David, Andrew, and Armstrong were essentially street dealers. Generally, members of the conspiracy purchased crack from New York, usually in quantities of sixty-two grams (one-sixteenth of a kilogram) or 125 grams (one-eighth of a kilogram), and sold it in Arlington.
 
 
 3
 In August 1992, the appellants, along with six others, were charged in a thirteen-count indictment with various violations of federal statutes, including conspiracy to possess with intent to distribute and distribute fifty grams or more of crack, 21 U.S.C.Secs. 841(a)(1) and 846 (count one). In addition, the indictment charged Andrew with three counts (counts three, four, and seven) of distribution of crack and one count (count eight) of possession of crack with intent to distribute, 21 U.S.C. Sec. 841(a)(1). The indictment also charged Armstrong with one count (count nine) of distribution of crack and one count (count eight) of possession of crack with intent to distribute, 21 U.S.C. Sec. 841(a)(1).
 
 
 4
 At trial, the government's evidence consisted of the testimony of government undercover agents, coconspirators, and cooperating witnesses. This testimony outlined how the crack was procured and distributed. The government's case also consisted of evidence of numerous controlled purchases.
 
 
 5
 The appellants were convicted on all counts. Middleton was sentenced to life imprisonment; Armstrong to 360 months' imprisonment; and Andrew and David to 292 and 235 months' imprisonment, respectively.
 
 
 6
 The appellants noted a timely appeal.
 
 II
 
 7
 On appeal, the appellants raise numerous assignments of error. Only a few merit brief discussion and we address each of these in turn.
 
 
 8
 * The government in Overt Act No. 92 of the indictment alleged that Middleton possessed crack on August 19, 1991. To prove this overt act, the government presented evidence that on August 19, 1991, Middleton obtained crack valued at about $300 from his partner and coconspirator, Prescod, borrowed Prescod's car, and, with two other coconspirators, Andrew Weeks and Patrick Harding, sold the crack. The government also presented evidence that, when Middleton was returning from this sale, he was stopped by a Fairfax County police officer for suspended tags. The police officer found a small amount of crack in the glove box of Prescod's car. Finally, the government introduced evidence that Weeks and Harding disclaimed any ownership interest in the crack.[1]
 
 
 9
 Knowing that Middleton was incarcerated from August 19, 1991 until October 8, 1991, counsel for Middleton asked Prescod on cross-examination:
 
 
 10
 Q. Now, paragraph 16 [of your plea agreement] states that from July of 1991 until September of 1991 you and Mr. Middleton distributed crack cocaine, is that right?
 
 
 11
 A. Yes, it is.
 
 
 12
 (J.A. 140). On redirect-examination of Prescod, the following colloquy occurred:
 
 
 13
 Prosecutor: Do you recall when Mr. Middleton was arrested in Fairfax?
 
 
 14
 Prescod: Yes, I remember.
 
 
 15
 Counsel for Middleton: Objection, Your Honor....
 
 
 16
 The Court: Objection overruled.
 
 
 17
 Prosecutor: Do you recall when he was arrested in Fairfax?
 
 
 18
 Prescod: Yes, I do....
 
 
 19
 Prosecutor: [D]id he sell any crack at Pops' house after he got arrested?
 
 
 20
 Prescod: Let me think. Yes, he did.
 
 
 21
 (J.A. 161).
 
 
 22
 Middleton's defense at trial consisted of testimony that he did not participate in a conspiracy to distribute crack. To bolster the plausibility of his defense, Middleton offered evidence that he was not in the Arlington area for substantial periods of time when the conspiracy ran its course, especially during the period following his arrest in August 1991.[2] To attack Prescod's credibility, Middleton called Lieutenant
 
 
 23
 John Bloomingdale of the Fairfax County Sheriff's Office who testified that Middleton was incarcerated from August 19, 1991 until October 8, 1991. In his closing argument to the jury, counsel for Middleton stressed that Prescod's testimony should be disbelieved because Middleton was incarcerated from August 19, 1991 until October 8, 1991.
 
 
 24
 Middleton contends that the government's introduction of evidence that he was arrested on August 19, 1991 constitutes reversible error. Middleton seems to take exception only to the government's reference to his arrest and Prescod's acknowledgment that he was arrested. The government responds by arguing that the evidence was admissible under Fed.R.Evid. 402 and Fed.R.Evid. 403. See Appellee's Brief at 25 ("The fact that the jury heard the word 'arrest' is of little consequence, as the jury knew that Middleton was driving a car found to contain crack cocaine [and][r]easonable jurors would naturally assume that Middleton's actions would normally lead to an arrest.").
 
 
 25
 We need not resolve the arguments raised by the parties. Instead, we hold that, even if the district court erred in admitting evidence of Middleton's arrest, the error was clearly harmless. Any possible error in admitting evidence is cured by a defendant's admission of those same facts. See United States v. Martinez, 981 F.2d 867, 873-74 (6th Cir.1992) (harmless error to admit evidence that the defendant had used cocaine where the defendant admitted that he used cocaine on direct examination and cross-examination), cert. denied, 113 S.Ct. 1874 (1993); United States v. Pelullo, 964 F.2d 193, 219 (3d Cir.1992) ("We need not determine whether [Leonetti's] testimony [about the loan] was hearsay for we are satisfied that if there was an error it was harmless since Pelullo, though advancing a benign explanation for the source of funds to repay the debt, admitted all of these facts under oath during his direct examination."). In this case, because Middleton sought to use the fact that he was incarcerated from August 19, 1991 until October 8, 1991 to his advantage in the presentation of his defense and his argument to the jury, he cannot complain about the government's reference to his arrest on appeal.
 
 B
 
 26
 At Armstrong's sentencing, the district court found that Armstrong was accountable for ten kilograms of crack, resulting in a base offense level of 40. See United States Sentencing Commission, Guidelines Manual, Sec. 2D1.1(c)(2) (Nov.1992). Armstrong contends that this finding is clearly erroneous. We disagree.
 
 
 27
 The government's evidence clearly established that Armstrong was accountable for the amount assessed by the district court. To dispose of Armstrong's argument, we need look no further than to the trial testimony of Theresa Robertson. She testified that she supported a $500 to $1000 a day crack habit for two years while working for the conspiracy, bringing close to thirty customers a day to a location in which Armstrong distributed crack. Robertson received $20 worth of crack for every $100 in sales. A $500 to $1000 a day crack habit amounts to about 2.5 to 5.0 grams, or about 1.8 to 3.6 kilograms of crack over a two-year period. Therefore, on the basis of Robertson's efforts alone, the conspiracy was accountable for five times that amount, or roughly nine to eighteen kilograms of crack. Under these circumstance, we cannot conclude that the district court's finding that Armstrong was accountable for ten kilograms of crack is clearly erroneous.
 
 C
 
 28
 David challenges the two-point enhancement in his base offense level for possession of a firearm, U.S.S.G. Sec. 2D1.1(b)(1).[3] This contention has no merit. The government's evidence established that two handguns, though ostensibly owned by Andrew, were openly displayed in the basement of Wanda Brooks' house, a house in which David lived and sold crack during the course of the conspiracy. Under the circumstances, we cannot conclude that the district court's finding that David possessed a firearm during the commission of his offense is clearly erroneous. United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.) (A defendant is subject to a Sec. 2D1.1(b)(1) enhancement for a coconspirator's possession of a dangerous weapon"if such possession was in furtherance of the conspiracy and reasonably foreseeable to" the defendant.), cert. denied, 112 S.Ct. 3051 (1992).
 
 D
 
 29
 David contends that the district court erred in finding that he did not play a minor role in the conspiracy and, as a result, refusing to reduce his offense level by two levels under U.S.S.G. Sec. 3B1.2.[4] We review findings made by the district court pursuant to U.S.S.G. Sec. 3B1.2 under the clearly erroneous standard. Brooks, 957 F.2d at 1149. The government's evidence established that David sold crack for the conspiracy and recruited others to sell crack, including Desmond Jones, a juvenile. Under the circumstances, the district court's finding that David did not play a minor role in the conspiracy is not clearly erroneous. Id. ("The district court did not clearly err in concluding that as a seller--if not as a lookout--Brooks was not occupying a 'minor' role entitling him to a decrease in offense level.").
 
 III
 
 30
 For the reasons stated herein, the judgments of the district court are affirmed.[5]
 
 AFFIRMED
 
 
 [1]
 Middleton was arrested on August 19, 1991 and incarcerated from that date until October 8, 1991
 
 
 [2]
 It was for this reason that the government sought to offer evidence through Prescod that Middleton distributed crack after his arrest in August 1991
 
 
 [3]
 Section 2D1.1(b)(1) provides:
 If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.
 
 
 [4]
 Section 3B1.2 provides:
 Based on the defendant's role in the offense, decrease the offense level as follows:
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 In cases falling between (a) and (b), decrease by 3 levels.
 
 
 [5]
 We find no merit to the arguments of Andrew, David, and Armstrong that there was insufficient evidence to support their conspiracy convictions