Filed 1/14/15  P. v. Baer CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060203 |
| v. | (Super.Ct.No. RIF1305405) |
| WALTER LEONARD BAER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Larrie R. Brainard, Judge. (Retired judge of the San Diego Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6, of the Cal. Const.)  Affirmed.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

While incarcerated, defendant and appellant Walter Leonard Baer was involved in a verbal and physical altercation with correctional deputies. Defendant appeals from the judgment entered following jury convictions for battery against a custodial officer (Pen. Code, § 243.1;[1] count 1) and resisting an executive officer in the performance of his duty (§ 69; count 2). The trial court sentenced defendant to 36 months formal probation.

Defendant contends the prosecutor made improper statements during closing argument and rebuttal, which constituted prosecutorial misconduct. Defendant also contends the trial court erroneously ordered defendant to pay the costs of probation supervision and the presentence report. We conclude the prosecutor's statements during closing argument and rebuttal did not amount to prejudicial error. In addition, defendant's objection to paying the costs of probation supervision and the presentence report is premature, since the court did not order defendant to pay a specific amount but, rather, ordered the probation department to make a determination as to the amount based upon defendant's ability to pay. The judgment is affirmed.

# II

## FACTS

On May 23, 2013, showers in cell housing unit 5B clogged, causing flooding in defendant's cell. Riverside County Sheriff's Correctional Deputy Jordan Kelley, who

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

was responsible for maintaining inmate custody and handling inmate housing unit problems, checked defendant's cell and observed water flowing into the cell. After calling for two inmate workers to help fix the flooding problem and clean up, Kelley arranged for defendant's cell door to be unlocked so that Kelley and the workers could clean up the water.

Once the cell door was open, Kelley directed defendant and his cellmate to step out of the cell while their cell was cleaned. Defendant's cellmate complied. Defendant did not. Instead, he began picking up his personal belongings. Defendant said he did not want to leave without his possessions. Kelley assured defendant he would not touch defendant's belongings. Kelley told defendant he needed to leave his belongings and exit the cell. Kelley explained that defendant did not need to take them because the work would only take a few minutes. Defendant ignored Kelley and continued gathering his items. Defendant told Kelley, "You guys are assholes. I'm not going to let you touch my stuff."

Defendant began cursing and kicking dirty water at Kelley. The water splashed in Kelley's eyes and mouth, and on his uniform. Defendant also threw a sandal and a wet Bible at Kelley. Concerned the situation might get out of control, Kelley called for backup and dispersed pepper spray at defendant. Defendant splashed water on his own face because of the pepper spray and called Kelley a "fucking pussy."

After being sprayed, defendant appeared to become compliant as defendant walked toward Kelley and Kelley grabbed defendant to restrain him. Defendant balled his hands into fists and became rigid as he crossed the cell threshold. This prevented

3

Kelley from putting defendant's arms behind his back. Correctional Deputy Donevan Norman arrived to assist. Defendant told Norman and Kelley, "If you guys let me turn around, I'll fuck you up." As Kelley turned his head toward Norman to ask for handcuffs, defendant head-butted Kelley. Kelley saw "stars," his vision went "white for a minute," and he was "dazed" for a few seconds. Defendant said, "I told you you didn't want to fucking fight me."

Kelley and Norman forced defendant to the ground and ordered him to get on his stomach. Defendant resisted the deputies' attempts to restrain him by rolling onto his back and flailing his arms and kicking. Defendant hit Kelley in the jaw with a closed fist. Kelley and Norman responded by punching defendant in the head and midsection. Two other deputies arrived as Kelley and Norman rolled defendant onto his back and cuffed him. Defendant complained his ribs were broken. Kelley suffered an injury to his left eye. The deputies did not know defendant prior to the altercation nor had they had any contact with him before.

Defendant testified that, at the time of the incident, he was incarcerated for a vandalism charge. He was lying down on his bed when water flooded his cell about four hours before the altercation. The water on the floor was about half an inch deep. When Kelley arrived at his cell and screamed at defendant to get out, defendant was trying to gather his personal belongings to prevent water from destroying them. Defendant was confused because he had never been in jail before and did not know what to do in this type of situation. In addition, he had started taking a new medication the night before and

4

felt as if he was in a "drunk stupor." He was trying to figure out what to do "without causing any problems."

Defendant felt it was difficult to communicate with Kelley because Kelley kept screaming at him. Defendant became frustrated. He had not previously removed his items from the floor because he was doing other things in his cell. His belongings were getting wet and he felt rushed to secure them. Defendant began moving faster, which caused him to splash water. He tripped over his sandal, causing water to splash onto Kelley. Kelley then sprayed defendant with pepper spray. Defendant could not breathe or see, was choking, and became disoriented. Defendant immediately put his hands behind his back and backed out of his cell because he did not want more pepper spray on him. He balled his hands because they hurt from the pepper spray.

Defendant admitted he cursed at Kelley and did not initially obey Kelley's commands to leave the cell. Defendant testified that Kelley was "a punk kid trying to take advantage of his power." Defendant also admitted stomping in the water and splashing it at Kelley.

After backing out of his cell doorway, deputies grabbed him and pushed him up against the wall, "smashing" his face against the wall. Defendant hit his head on the same spot he had injured the day before and bumped the back of his head. Defendant unintentionally hit Kelley with his head. Kelley cursed defendant. Defendant told Kelley, "Oh, you shouldn't have fucked with me," to anger Kelley. The deputies pulled defendant's feet out from under him and his face "slid[] down the wall." Defendant and the two deputies fell to the ground and "tumbled" around.

5

Defendant testified that at one point, he inadvertently put Kelley in a "headlock" while Kelley bent over him. Defendant immediately rolled onto his stomach so that he could be cuffed behind his back. Contrary to the deputies' testimony, defendant denied ever rolling onto his back. While on the ground, the deputies punched him many times in the back and ribs. He believed his ribs were broken. Defendant denied intentionally hitting, kicking, or head-butting the deputies. Defendant testified that the deputies beat him up and lied on the stand.

## III

## PROSECUTORIAL ERROR

Defendant contends the prosecutor committed misconduct by vouching for the veracity of the correctional deputies and maligning defendants' character.

### A. *Forfeiture*

Citing *People v. Zambrano* (2007) 41 Cal.4th 1082, 1166, the People argue defendant forfeited his objections to the prosecutor's statements made during closing argument and rebuttal by not objecting in the trial court. "'To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument. [Citation.]" [Citation.] A failure to timely object and request an admonition will be excused if doing either would have been futile, or if an admonition would not have cured the harm.' [Citation.]" (*People v. Adams* (Oct. 30, 2014, S118045) __ Cal.4th __, [2014 Cal. LEXIS 10319, *55-56] (*Adams*).)

6

Here, defendant did not object at trial to any of the prosecutor's statements, which defendant asserts constitute prosecutorial misconduct. Nothing suggests an objection would have been futile or an admonition inadequate to cure any harm. Thus, defendant's claim of misconduct during closing argument and rebuttal is forfeited. (*Adams*, *supra*, __ Cal.4th at p. ___, 2014 Cal. LEXIS 10319 at pp. *55-56; *People v. Tully* (2012) 54 Cal.4th 952, 1011.)

Defendant argues that, even assuming he forfeited the objections, his attorney committed ineffective assistance of counsel (IAC) by not timely objecting to the prosecutorial error. We disagree.

*B. IAC*

To secure the reversal of a conviction based on IAC, a defendant must show (1) his counsel's performance was deficient when measured against the standard of a reasonably competent attorney, and (2) counsel's deficient performance so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. The appellate court must presume counsel's conduct fell within the wide range of reasonable professional assistance and accord great deference to counsel's tactical decisions. (*People v. Lewis* (2001) 25 Cal.4th 610, 674.)

Further, because it is inappropriate for a reviewing court to speculate about the tactical reasons for counsel's actions, when the reasons are not readily apparent in the record, the court will not reverse unless the record discloses no conceivable tactical purpose. (*People v. Lewis*, *supra*, 25 Cal.4th at pp. 674-675.) If the record sheds no light on the reasons for counsel's actions, a claim of ineffective assistance is more

7

appropriately decided in a habeas corpus proceeding. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Here, the reasons defense counsel did not object are not readily apparent. Because of the wide latitude given during closing argument, it is conceivable defense counsel believed the trial court would consider the prosecutor's arguments a fair comment on the evidence, as explained below. Therefore, even if defense counsel had objected, it was unlikely the trial court would have sustained the objections. Furthermore, even assuming the prosecutor's comments were improper, defendant cannot show prejudice. It is unlikely that, had defense counsel objected or had the prosecutor not made the statements defendant contends were improper, the outcome would have been any different. Therefore defendant has not established IAC.

## C. Prosecutorial Error

"The principles of law applicable to a defendant's claims of prosecutorial misconduct are well settled. ""'A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.' [Citation.] When a claim of misconduct is based on the prosecutor's comments before the jury, as all of defendant's claims are, "'the question is whether there is a reasonable likelihood that the jury construed or applied any of the

8

complained-of remarks in an objectionable fashion.”’ [Citation .]”’”” (*Adams*, *supra*, __ Cal.4th at p. ___, 2014 Cal. LEXIS 10319 at p. *55.)

*(a) Vouching for the Veracity of the Correctional Deputies*

Defendant contends the prosecutor improperly bolstered the deputies' credibility by stating during closing argument that “[i]t's unreasonable to believe that three deputies that never had any contact with the defendant are going to go lie about some version of events, put their careers on the line, especially a deputy that's been there for six months, nine months, and one that's been there for six years and just trying to make a career for some guy they've never met over a squeegeeing of a cell for three minutes.” The prosecutor added that the jury must consider whose story is reasonable; the deputies' story or defendant's. Defendant also objected to the prosecutor's similar argument during rebuttal, stating that, “As I explained before, these deputies have never met the defendant before. They're not putting their careers on the line for some guy they've never met before by just throwing him into a concrete wall.”

Defendant argues that the prosecutor argued facts not in the record. While there was no testimony that the deputies would be putting their careers on the line if they lied, a reasonable inference could be made from the facts that it was unlikely they would do so. Kelley testified he had been with the Riverside County Sheriff's Department as a correctional deputy for six years, and Norman had been a correctional deputy over eight months. Badajoz testified she had been a correctional deputy with the Riverside County Sheriff's Department for over a year and a half. The three deputies testified that they had not had any contact with defendant prior to the incident. There was also testimony that

9

the altercation occurred when Kelley brought two inmate workers with him to clean defendant's cell with a squeegee, mop, and bucket.

"Prosecutorial assurances, *based on the record*, regarding the apparent honesty or reliability of prosecution witnesses, cannot be characterized as improper 'vouching,' which usually involves an attempt to bolster a witness by reference to facts *outside* the record." (*People v. Medina* (1995) 11 Cal.4th 694, 757, citing *People v. Anderson* (1990) 52 Cal.3d 453, 479 (*Anderson*).) Here, the prosecutor properly relied on facts in the record and inferences reasonably drawn from the facts, rather than solely from any purported personal knowledge or belief. (*Medina*, at p. 757.)

The prosecutor's statements challenged in the instant case are similar to those in *Anderson*, *supra*, 52 Cal.3d 453, in which the defendant objected to the prosecutor vouching for law enforcement officers' credibility and attacking the defendant's credibility during closing argument. The *Anderson* court stated that the prosecutor's remarks, "in essence supported the credibility of the officers testifying in this case by noting that 'a number of them . . . are old, experienced officers. They've got 15, 20, 22 years of experience on the force.' The prosecutor expressed her doubt that any of them would 'jeopardize' his reputation by lying on the witness stand 'just to convict one defendant.'" (*Id.* at p. 478.) The prosecutor added that, on the other hand, the defendant did not have anything to lose by lying. (*Ibid.*)

Even though the defendant did not object in the trial court to the remarks, the *Anderson* court considered and rejected the defendant's prosecutorial misconduct objection on the merits, explaining: "The prosecutor is generally precluded from

10

vouching for the credibility of her witnesses, or referring to evidence outside the record to bolster their credibility or attack that of the defendant.  [Citations.]  In the present case, the prosecutor limited her remarks to *facts of record*, namely, the years of experience of the officers involved, and her 'vouching' was clearly based on inferences reasonably drawn therefrom, rather than on her personal belief or knowledge.  (See *People v. Adcox* (1988) 47 Cal.3d 207, 258-259 . . . [prosecutor's arguments were based on inferences warranted by the evidence, rather than personal belief].)  We find no improper prosecutorial vouching here."  (*Anderson*, *supra*, 52 Cal.3d at p. 479.)

Relying on *People v. Padilla* (1995) 11 Cal.4th 891 (*Padilla*), defendant argues the prosecutor improperly vouched for the deputies' veracity or bolstered their credibility by stating that it was unreasonable to believe the deputies would put their careers in jeopardy by lying.  In *Padilla*, the defendant argued the prosecutor improperly vouched for the credibility of its ballistics expert.  The *Padilla* court noted, "a prosecutor is free to give his opinion on the state of the evidence, and in arguing his case to the jury, has wide latitude to comment on both its quality and the credibility of witnesses.  [Citations.]  It is misconduct, however, to suggest to the jury in arguing the veracity of a witness that the prosecutor has information undisclosed to the trier of fact bearing on the issue of credibility, veracity, or guilt.  The danger in such remarks is that the jury will believe that inculpatory evidence, known only to the prosecution, has been withheld from them."  (*Id.* at pp. 945-946.)

The *Padilla* court concluded, "Rather than vouching for the credibility of witnesses on grounds not revealed to the jury, the prosecutor here simply drew inferences

11

as to credibility on the basis of evidence presented to the jury; this he was entitled to do, and no basis for a defense objection appears." (*Padilla*, *supra*, 11 Cal.4th at p. 946.) Likewise, in the instant case, the prosecutor did not vouch for the deputies' credibility based on facts not revealed to the jury.

The *Padilla* court, however, suggested that the prosecutor had improperly vouched for the ballistics expert's credibility. Nevertheless, the court concluded the error was not prejudicial. Responding to the defense counsel's suggestion the prosecution's expert lied, the prosecutor insisted that, had he lied, the expert "would have 'risked his whole career of 17 years.'" (*Padilla*, *supra*, 11 Cal.4th at p. 946.) The defendant in *Padilla* argued that the remark was improper, relying on *U.S. v. Martinez* (6th Cir. 1992) 981 F.2d 867 (*Martinez*). The *Padilla* court agreed the court in *Martinez* "held a closely similar argument by a prosecutor (asking the jury why a state police officer would 'risk his career, 18 years in the state police, to come in here and lie . . . .') to be improper. Although we doubt that the argument was proper, we find no reasonable probability that defendant was prejudiced by the prosecutor's argument in this case." (*Padilla*, at p. 946.)

In *Martinez*, *supra*, 981 F.2d at page 871, codefendant Virginia Escamilla argued that the prosecutor improperly vouched for the credibility of Detective Winters in closing argument. In response to defense counsel arguing Winters was an unreliable witness, the prosecutor responded: "So why would Detective Winters lie about Virginia Escamilla? Is there something that's particularly significant or important about her that he would lie about, that he would risk his career, 18 years in the state police, to come in here and lie about that?" (*Ibid*.) Defense counsel's objection to the argument was overruled.

12

In response to Escamilla's contention of improper vouching because there was no evidence that Winters risked his 18-year career if he lied, the *Martinez* court stated: "It has been held that 'vouching' occurs when counsel, in argument, refers to evidence not in the record, [citation], and the government . . . concedes that this is the law. However, before this court can reverse Escamilla's conviction for a prosecutorial impropriety, we must conclude that the impropriety was so 'gross as probably to prejudice the defendant.' [Citation.]" (*Martinez*, *supra*, 981 F.2d at p. 871.) Unlike in *Martinez*, in the instant case there was evidence in the record as to the length of time the deputies had careers as correctional officers. But even assuming the prosecutor's remarks nevertheless constituted improper vouching, it was harmless error.

In *Martinez*, the federal court of appeals concluded the vouching did not amount to prejudicial error, explaining: "In this case, we believe that the prosecutor's comment was simply an isolated misstatement. It is unlikely that it prejudiced Escamilla. [Citation.] Any possible prejudice that Escamilla might have suffered was ameliorated by the trial court's instruction to the jury that 'the lawyers' statements . . . and their arguments are not evidence." [Citation.] This instruction was sufficient to neutralize the prosecutor's slight impropriety. [Citation.] Therefore, we conclude that the district court's ruling was not reversible error." (*Martinez*, *supra*, 981 F.2d at p. 871.)

Likewise in the instant case, the prosecutor's remarks were brief and relatively innocuous. Any possible prejudice would have been ameliorated by the trial court's jury instruction that lawyers' statements and their arguments are not evidence. (CALCRIM

13

Nos. 104, 222.) It is presumed the jury properly followed the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

Furthermore, there was strong evidence supporting defendant's convictions, such that it was not reasonably likely the result would have been more favorable to defendant, had the prosecutor's objectionable remarks not been made. Three deputies all corroborated each other's versions of the altercation, and defendant's testimony regarding the altercation was nonsensical in many instances, such as defendant's excuse for not having collected his items to prevent them from getting wet until Kelley arrived, claiming he was not familiar with jailhouse procedures, and defendant claiming he was disoriented from medication and pepper spray, but then stating that he reacted like a "stunt man" when on the floor with the deputies.

In addition, defendant admitted he refused to leave his cell when Kelley ordered him to do so. Defendant's cellmate complied. Defendant also admitted splashing water toward Kelley, admitting placing Kelley in a headlock, striking Kelley with his head, and telling Kelley afterwards, "I told you you didn't want to fucking fight me," indicating defendant intentionally struck him. Based on the totality of the evidence, we conclude the prosecutor's statements regarding the deputies' credibility, if improper, constitute harmless error. It was not reasonably likely the jury would have reached a more favorable verdict in the absence of the statements, and the prosecutor's conduct did not render defendant's trial fundamentally unfair.

*(b) Maligning Defendants' Character*

Defendant argues the prosecutor also committed misconduct by maligning defendant's character and the character of all jail inmates by improperly referring to facts not supported by the record. Defendant cites *People v. Heishman* (1988) 45 Cal.3d 147, 197, for the proposition a prosecutor may not refer to a defendant's nontestimonial demeanor.

In *Heishman*, the defendant objected to the prosecutor mentioning during argument references to the expressions on the defendant's face. The *Heishman* court noted that, in criminal trials, "prosecutorial references to a nontestifying defendant's demeanor or behavior in the courtroom have been held improper on three grounds: (1) Demeanor evidence is cognizable and relevant only as it bears on the credibility of a witness. (2) The prosecutorial comment infringes on the defendant's right not to testify. (3) Consideration of the defendant's behavior or demeanor while off the stand violates the rule that criminal conduct cannot be inferred from bad character. [Citations.]" (*People v. Heishman*, *supra*, 45 Cal.3d at p. 197.) The *Heishman* court concluded the prosecutor's references to the defendant's facial demeanor were not improper because they were made during the penalty phase, "in which defendant had placed his own character in issue as a mitigating factor. Under those circumstances it was proper for the jury to draw inferences on that issue from their observations of defendant in the courtroom and therefore proper for the prosecutor to base a closing argument on such observations." (*Ibid*.)

15

Defendant also cites *People v. Garcia* (1984) 160 Cal.App.3d 82 in support of his contention the prosecutor improperly asked the jurors to speculate about defendant's behavior during the charged offense, based on his behavior in court. In *Garcia*, the defendant complained that the prosecutor improperly remarked during closing argument that, when the victims testified about their horrendous experiences, the defendant, who did not testify, snickered and jeered and laughed. (*Id*. at pp. 87, 93.) The *Garcia* court held the prosecutor's statement improperly invited the jury to speculate that the defendant's conduct demonstrated he would, and had, committed a crime. (*Id.* at p. 93.)

Neither *Heishman* or *Garcia* is applicable because they concern conduct by a defendant who did not testify. Here, defendant testified, and the conduct the prosecutor mentioned concerned primarily defendant's conduct while testifying. Therefore defendant placed his own character in issue and it was proper for the prosecutor to refer to defendant's hostile behavior on the witness stand, and for the jurors to draw inferences from their observations of defendant's demeanor, particularly when considering his credibility as a witness. The trial court appropriately instructed the jury that, when evaluating the accuracy of witnesses' testimony and witness credibility, the jury could consider: "What was the witness's behavior while testifying?"

Defendant argues that although he was a witness, the prosecutor's numerous referrals to defendant's demeanor off the witness stand was "particularly troubling," because it constituted facts not in evidence. The only comment made by the prosecutor, that defendant specifically complains was improper, is the remark that, "if [defendant] can't behave in a courtroom, imagine what he's like in a cell faced with deputies." The

16

prosecutor added, "Imagine what [defendant] was like on that incident." Defendant argues the prosecutor improperly implied defendant's nonevidentiary conduct demonstrated that he was not credible. But the prosecutor did not mention any nonevidentiary conduct, other than defendant's conduct while testifying.

Defendant argues the prosecutor committed misconduct by maligning defendant and other inmates by improperly arguing facts not in evidence regarding the jailhouse setting and portraying the deputies as victims. Defendant asserts the prosecutor improperly argued during closing argument that the jail is full of people who are removed from society, and asked the jury to consider "the jail environment, what those deputies have to do every day in dealing with those individuals." This comment was made within the context of the prosecutor explaining that Kelley told defendant to leave the cell and defendant did not comply because he wanted to gather his belongings. The prosecutor noted that in the jail environment, inmates do not have control.

Defendant also objects to the following statement made by the prosecutor when discussing whether the deputies used reasonable force: "The question is was reasonable force used? Based on the circumstances, the jail environment, what those deputies have to do every day in dealing with those individuals and the rules they have and the importance of these individuals complying, it was reasonable."

Defendant further objects to the prosecutor's statement made during rebuttal, which defendant contends improperly portrays the deputies as victims: "The defendant's story is just unreasonable. And he made an attempt to try to make himself a victim, but don't lose . . . sight of the fact that the real victims are the correctional deputies that have

17

to put up with everybody in the jail, and on top of that they have to put up with the defendant attacking . . . them.  The defendant is saying he was not the aggressor.  It was just those young punks.  Those young punks."  There was evidence that the deputies were victims during the altercation, particularly Kelley, when defendant splashed dirty water in his face and punched Kelley in the jaw.

Defendant argues the statements regarding the jail environment and inmates were improper because the inmates, other than defendant, were not on trial and there was no evidence presented that the inmates were as monstrous, deplorable, and untrustworthy as the prosecutor made them seem.  Defendant maintains that the prosecutor attempted to convey an image of the inmates as being so incredibly untrustworthy that the jury should sympathize with and believe the deputies.  Defendant asserts the prosecutor's statements maligning defendant and other inmates constituted clear misconduct because the statements were deceptive and reprehensible.

We conclude otherwise.  The prosecutor's statements were not deceptive or reprehensible, and did not render the trial fundamentally unfair in violation of defendant's due process rights.  (*Adams*, *supra*, __ Cal.4th at p. __, 2014 Cal. LEXIS 10319 at pp. *55-56.)  Prosecutors have wide latitude to draw inferences from the evidence presented at trial.  (*People v. Hill* (1998) 17 Cal.4th 800, 819.)  The prosecutor did not mischaracterize the evidence or rely on facts outside the record.  The prosecutor's remarks were sufficiently founded on trial evidence and reasonable inferences derived from the evidence.

Even if the prosecutor's statements were improper, such error was harmless. As discussed above, there was strong evidence supporting defendant's convictions, such that it is not reasonably likely the result would have been more favorable to defendant, had the prosecutor's objectionable remarks not been made.

IV

REIMBURSEMENT OF COSTS

Defendant contends the trial court erred in ordering him to pay the costs of probation supervision and the presentence report. Defendant complains that his attorney never discussed the possibility of the court ordering him to pay such costs and did not tell him he had a right to contest paying them. Defendant also was not asked if he waived his right to a hearing on payment of the costs. Defendant asserts that, given the opportunity, he would have requested a hearing and opposed imposition of the presentence report and probation supervision costs. In addition, defendant argues the presentence report supports a finding he did not have the ability to pay the costs. Defendant's objection is premature.

Section 1203.1b provides in relevant part: "(a) In any case in which a defendant is convicted of an offense and is the subject of any preplea or presentence investigation and report, . . . and in any case in which a defendant is granted probation or given a conditional sentence, the probation officer, or his or her authorized representative . . . shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of any probation supervision . . . , of conducting any presentence investigation and preparing any presentence report . . . . The court shall order the

19

defendant to appear before the probation officer, or his or her authorized representative, to make an inquiry into the ability of the defendant to pay all or a portion of these costs. The probation officer, or his or her authorized representative, shall determine the amount of payment and the manner in which the payments shall be made to the county, based upon the defendant's ability to pay. The probation officer shall inform the defendant that the defendant is entitled to a hearing, that includes the right to counsel, in which the court shall make a determination of the defendant's ability to pay and the payment amount. The defendant must waive the right to a determination by the court of his or her ability to pay and the payment amount by a knowing and intelligent waiver."

During the sentencing and probation hearing, the trial court agreed to allow defense counsel to review the probation terms with defendant but, before defense counsel had a chance to do so, the court proceeded with the hearing. During the hearing, defense counsel requested defendant be placed on probation instead of incarcerated. Defense counsel and defendant explained that defendant had experienced tough times, including going through a divorce, losing his job, losing his house to foreclosure, suffering injuries in a motorcycle accident, becoming disabled, and no longer being able to work.

The probation department recommended in its probation report that, pursuant to section 1203.1b, defendant "[p]ay costs of pre-sentence probation report in an amount and manner to be determined by the Probation Department, not to exceed $1,095.00," and "[p]ay the costs of probation supervision in an amount to be determined by the Probation Department. Based on the level of supervision, the cost will range from $591.12 to $3,744.00."

In accordance with the probation department's recommendation, the trial court ordered defendant placed on probation. The court requested defense counsel to read to defendant the terms and conditions of probation. Defense counsel did so off the record. Thereafter defendant stated that he accepted the terms and conditions of probation. The court ordered defendant to report to the probation department and Enhanced Collections Division. In addition, the court ordered defendant to submit a record of income and expenditures to his probation officer and pay the cost of the presentence probation report and probation supervision, with the amount to be determined by the probation department.

The record shows that defendant's objection to paying the costs of probation supervision and the presentence report is premature because the trial court did not order that defendant pay a specific amount. Instead, the court appropriately ordered that the probation department determine the amount of these costs defendant would be required to pay in accordance with section 1203.1b. Under section 1203.1b, defendant was entitled to a hearing on the amount of costs to be paid, if anything, and the amount would be based upon the defendant's ability to pay. Since the court and probation department had not yet determined or ordered the specific amount of the costs in question, defendant's objection to paying the costs for probation supervision and the presentence report is premature.

V

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


McKINSTER
   Acting P. J.


MILLER
   J.


22