RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0454p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 05-5334

OSCAR PAIGE, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 03-00091—Thomas Varlan, District Judge.

Argued: November 28, 2006

Decided and Filed: December 12, 2006

Before: MARTIN and GUY, Circuit Juges; ROSE, District Judge.[*]

_____

## COUNSEL

**ARGUED:** John G. McDougal, McDOUGAL LAW OFFICES, Chattanooga, Tennessee, for Appellant. Christopher D. Poole, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** John G. McDougal, McDOUGAL LAW OFFICES, Chattanooga, Tennessee, for Appellant. Christopher D. Poole, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

_____

## OPINION

_____

RALPH B. GUY, JR., Circuit Judge. Defendant Oscar Paige, Jr., was found guilty by a jury of: (1) conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base; (2) aiding and abetting possession with intent to distribute more than 50 grams of cocaine base; and (3) possession of a firearm in furtherance of the charged conspiracy. 21 U.S.C. §§ 841(a)(1) and 846; 18 U.S.C. § 924(c). The district court sentenced defendant to a mandatory life term on the drug offenses, and a mandatory consecutive five-year term on the firearm offense. Defendant challenges the sufficiency of the evidence to support each conviction, the jury instructions on possession, and application of the statutory sentencing enhancement that resulted in the mandatory life sentence. After review of the record and the arguments presented on appeal, we affirm.

_____

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

1

# I.

Defendant Oscar Paige, Jr., was charged in a nine-count indictment along with five codefendants: his son, Oscar Paige III (Oscar); his daughter, Kimberly Paige (Kim); Kim's boyfriend, Labron Dave (Dave); Oscar's girlfriend, Carlene Fearn (Fearn); and Oscar's son, Cornelius Hayes (Hayes). All five codefendants entered guilty pleas and agreed to cooperate with the government. The government filed an information giving notice of its intention to seek sentencing enhancement on the basis of the defendant's prior felony drug convictions. 21 U.S.C. § 851. Defendant pleaded not guilty and went to trial on counts 1, 2, and 3, while counts 5 and 6 were dismissed by the government.

Chattanooga Police Detective Lee Wolff learned from a confidential informant that defendant's son Oscar and his family were selling cocaine base, or "crack," from a duplex on North Orchard Street in Chattanooga. The defendant, age 58, was living with Oscar in the right side of the duplex, while Kim and her boyfriend were living in the left side of the duplex. Wolff conducted an investigation, and the informant made two controlled purchases of crack from the duplex. Wolff obtained a search warrant, which was executed on December 5, 2002.

Officers knocked and announced themselves, then made forced entry into the right side of the duplex. They found the defendant sitting on a couch in the front living-room area, and they found Oscar in the kitchen, Fearn in a closet, Hayes running down a hall, and Felicia Paige in a back room. The officers found baggies containing a total of 17.6 grams of crack cocaine. Also found were digital scales with cocaine residue, "corner baggies" used to package crack, a plate with crack and a razor blade on it, $900 cash, a walkie-talkie, and two loaded firearms. One firearm, a .25 caliber semi-automatic pistol, was found under the cushion where the defendant was sitting. The other, a sawed-off 12-gauge shotgun, was found on the floor near the defendant. The officers forcibly entered the left side of the duplex, where they found Kim Paige and Labron Dave. From the left side of the duplex, officers seized 39.9 grams of crack cocaine, approximately $1,100 in cash, two more guns, razor blades, and a walkie-talkie that matched the one found in the defendant's side of the residence.

Oscar and Kim testified against the defendant at trial. Both acknowledged that they were cooperating with the government in hopes of getting a break at sentencing, but testified that no promises had been made regarding their sentences. Oscar indicated that he was facing a possible life sentence, while Kim conceded that she was facing at least a 15-year sentence. Both understood that they had to testify truthfully to have a chance at a reduced sentence.

According to Oscar, he, his father, his sister, and his sister's boyfriend were selling crack from the duplex 24 hours a day. Oscar and his father smoked crack and sold it to support their habit. Oscar testified that they sold crack from the door during the day, and from the window at night. Kim kept most of the crack and would "front" Oscar and the defendant about $100 worth of crack cocaine at a time. Oscar testified that they earned $20 on every $120 in sales, and would make about $1,000 on a good day.

In addition, Oscar explained that the two firearms found in the right side of the duplex were taken "in pawn" for crack, but that he and his father kept the loaded firearms for protection. Oscar testified that the defendant touched those firearms "plenty of times," and explained that he and his father would grab one of the firearms to hold while selling crack from the window at night. According to Oscar, Dave purchased one of the firearms found on the other side of the duplex for protection after Kim was shot during a break-in by rival drug dealers.

Oscar and Kim testified that the walkie-talkies were used to communicate between the two sides of the duplex. Kim said that it was her idea to get the walkie-talkies, and that she assigned

numbers to each person, including the defendant, to be used instead of names. Kim explained that she was the "main person" in the conspiracy, and that her father and the others sold crack for her. Kim hid the larger quantities of crack in several places in the left side of the duplex. In fact, she testified that one ounce of crack was hidden so well that it was not found during the execution of the search warrant. That ounce was sold from the duplex the day after she and Oscar were released on bond.

In all, officers seized a total of 57.5 grams of crack cocaine from the duplex—17.6 grams from the side where defendant and Oscar lived and 39.9 grams from the side where Kim and her boyfriend lived. ATF Agent Cordell Malone testified that more than 50 grams of cocaine was an amount indicative of distribution, as was the presence of the walkie-talkies, scales, firearms, and cash. Defendant presented no evidence at trial. The jury returned verdicts of guilty on all three counts, and made specific findings that the drug offenses involved more than 50 grams of cocaine base.

The government sought an enhanced sentence under 21 U.S.C. § 841(b)(1)(A), which provides that a person convicted of a violation involving 50 grams or more of cocaine "after two or more prior convictions for a felony drug offense have become final, . . . shall be sentenced to a mandatory term of life imprisonment without release[.]"[1] At sentencing, the district court found the defendant had six prior felony drug convictions, only two of which were required to trigger the enhancement, and sentenced defendant to two concurrent life sentences on the drug offenses and a mandatory consecutive five-year term on the firearm offense. This appeal followed.

## II.

### A.     Sufficiency of Evidence

In reviewing the denial of a motion challenging the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The parties have identified this as the appropriate standard, but have not indicated whether a proper Rule 29 motion for acquittal was made at trial. FED. R. CIV. P. 29. If a proper motion was not made, the issue is waived and our review is "limited to determining whether there was a 'manifest miscarriage of justice.'" *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (citation omitted). A miscarriage of justice exists when the record is "'devoid of evidence pointing to guilt.'" *Id.* (citation omitted). Because the evidence presented was more than sufficient to support the defendant's convictions, however, we would affirm under either standard.

First, in a general attack on his convictions, defendant argues that the evidence was not sufficient because it rested exclusively on the testimony of the cooperating codefendants who testified in hopes of receiving a reduced sentence. However, "[a]ttacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991). In assessing the sufficiency of the evidence, "we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994). "[W]e draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001).

---

[1] A quantity of between 5 and 50 grams plus one prior drug conviction would result in an enhanced sentence of not less than 10 years and not more than life imprisonment. 21 U.S.C. § 841(b)(1)(B).

The elements of a drug conspiracy are (1) an agreement by two or more persons to violate the drug laws, (2) knowledge and intent to join in the conspiracy, and (3) participation in the conspiracy. *Id.*; *United States v. Elder*, 90 F.3d 1110, 1120 (6th Cir. 1996). Defendant argues that there was insufficient evidence of an agreement, and that his involvement represented at most a buyer-seller relationship. It is not necessary that the government prove a formal agreement, and the existence of a conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in a common plan. *United States v. Avery*, 128 F.3d 966, 970-71 (6th Cir. 1997). A conspirator need not be an active participant in every phase of a conspiracy, so long as he is a party to the general conspiratorial agreement. *Salgado*, 250 F.3d at 447. While mere presence at the scene would be insufficient to establish participation, a defendant's participation in the conspiracy's common purpose may be inferred from the circumstances as well. *Id.*

In this case, there was ample evidence from which a reasonable juror could conclude that a conspiracy to possess with intent to distribute more than 50 grams of cocaine existed, and that the defendant's participation went beyond mere presence. The evidence, if believed, showed a tacit agreement or mutual understanding sufficient to demonstrate the existence of the conspiracy. *United States v. Lloyd*, 10 F.3d 1197, 1210 (6th Cir. 1993). Kim, the "main person," obtained significant quantities of crack that she and the others sold from the duplex on an ongoing basis. She repeatedly fronted $100 worth of crack to the defendant and Oscar for them to sell day and night. Moreover, there was evidence from which the jury could infer from the defendant's involvement in selling the crack that he was a party to the general conspiratorial agreement. We find that there was more than sufficient evidence to establish not only that the conspiracy existed, but also that the defendant knew of, intended to join, and participated in that conspiracy.

Next, defendant argues that the government failed to prove that he possessed, either constructively or jointly, any more than the 17.6 grams of crack cocaine seized from the side of the duplex where he and Oscar lived. This argument is presumably aimed at his substantive conviction for aiding and abetting the possession with intent to distribute more than 50 grams of crack cocaine. For possession with intent to distribute, the government would have to prove knowing possession—actual, constructive, or joint—with intent to distribute. *Salgado*, 250 F.3d at 447. To prove aiding and abetting, on the other hand, the government must show that the defendant knew that the principals possessed more than 50 grams of cocaine with the intent to distribute it, and that the defendant assisted in their plan to deliver the cocaine. *United States v. Ledezma*, 26 F.3d 636, 641 (6th Cir. 1994). It is not necessary for aiding and abetting, however, that the government prove that the defendant actually or constructively possessed the cocaine. *Id.*; *see also Salgado*, 250 F.3d at 447. There is no doubt that the evidence, taken in the light most favorable to the government, is sufficient to show both that more than 50 grams of cocaine was possessed with intent to distribute it, and that the defendant assisted or facilitated the possession with intent to distribute by helping to sell the crack that Kim supplied to the defendant and Oscar.

Finally, on the firearm offense, the government had to prove that the defendant knowingly possessed a firearm "in furtherance of" the charged conspiracy to possess with intent to distribute crack cocaine. 18 U.S.C. § 924(c)(1). The evidence is more than sufficient to establish the nexus between the weapon and the crime that is necessary to prove that the weapon was possessed "in furtherance of" the conspiracy. *United States v. Mackey*, 265 F.3d 457, 461-62 (6th Cir. 2001) ("in furtherance of" means that the weapon must advance, promote, or facilitate the crime). The two loaded firearms were found under a cushion and next to the couch in the duplex from which crack was being sold at all hours of the day and night and in which the officers found crack cocaine, $900 cash, and digital scales with cocaine residue. The evidence showed that the defendant and his son kept the loaded firearms in their residence for protection against robbery and would hold a weapon while selling crack from the window at night. Oscar specifically testified that the defendant touched the weapons "plenty of times."

Without challenging the nexus between the weapon and the crime, defendant seems to argue instead that he could not have been convicted of this charge because one or more of his codefendants had already been convicted of possessing these firearms. This argument misapprehends the law regarding possession. Possession may be "either actual or constructive and it need not be exclusive but may be joint." *United States v. Covert*, 117 F.3d 940, 948 (6th Cir. 1997). The evidence was more than sufficient to support a finding that the defendant had constructive possession of the firearms found in close proximity to the defendant and kept openly in the duplex where he resided.[2]

## B.       Sentencing

Defendant challenges the district court's finding that he had at least two prior convictions that qualified as predicate convictions for purposes of enhancement under § 841(b)(1)(A). Six prior felony drug convictions were alleged by the government in the information filed under 21 U.S.C. § 851 and were included in the presentence report as part of the defendant's criminal history. Defendant did not file written objections under § 851 and objected to the presentence report only to the extent that the convictions were being counted separately. The government alleged that two convictions were entered on March 18, 1977, one for possession of marijuana (that was later shown to be for possession of heroin), and one for felonious selling of controlled substances. Four other convictions were allegedly entered on June 19, 1990, all of which were for felonious selling of controlled substances.[3]

Asked at sentencing to affirm or deny the prior convictions, defendant initially affirmed two convictions, one from March 18, 1977, and one from June 19, 1990, but then quarreled with the specifics of two other convictions and elected to put the government to its proofs. Defendant indicated that the first conviction involved heroin rather than marijuana, which the district court later found to be the case, and discovered that one of the plea documents had his correct date of birth but an incorrect social security number. Although the defendant had failed to object earlier, the sentencing hearing was continued.

At the later hearing, the government presented documentation to establish the alleged predicate convictions, including certified copies of the judgments, booking photographs, and fingerprint evidence, and the district court made a factual determination that the defendant had six prior felony drug convictions. Defendant asserts on appeal that there is some concern about the possibility of mistaken identity because one or more documents incorrectly identified his social security number. This is neither a denial, nor an adequate showing sufficient for this court to conclude that the district court clearly erred in finding that the defendant had at least two qualifying prior felony drug convictions.

Defendant also asserts for the first time on appeal that his prior felony convictions may be constitutionally invalid. However, unless the prior felony convictions have previously been ruled

---

[2]Defendant also argued that the district court failed to instruct the jury as to sole, actual, constructive, and joint possession. The record shows, however, that the jury was in fact instructed as to the definition of possession, both actual and constructive, and advised that it is not necessary "to prove that the defendant was the only one who had possession of the cocaine base. Two or more people can together share actual or constructive possession over property." There was no error, plain or otherwise, in the district court's instruction as to possession.

[3]Defendant argued that the four prior convictions for selling and delivering cocaine sentenced together on June 19, 1990, should only have counted as one conviction because they arose out of an ongoing drug conspiracy. On the contrary, for purposes of enhancement under § 841(b)(1), convictions for conduct occurring on separate dates are counted separately even though they may have been related in purpose and even if the sentences were ordered to run concurrently. *United States v. Hughes*, 924 F.2d 1354, 1361-62 (6th Cir. 1991); *United States v. Anderson*, 76 F.3d 685, 690 (6th Cir. 1996). The PSR indicates that although the offenses were sentenced together, the transactions occurred on separate dates.

invalid or were obtained without attorney representation, a defendant may not collaterally attack the constitutional validity of a prior conviction at sentencing. *Custis v. United States*, 511 U.S. 485 (1994). In support, defendant states only that "he bears no indicia of recollection as to having counsel or one appointed to him during the proceedings alleged." While the defendant's lack of recollection falls short of demonstrating the invalidity of any or all of his prior convictions and the issue was waived by the defendant's failure to raise it at sentencing, the record reflects that the defendant was represented by counsel in connection with the sentences imposed on March 18, 1977, and on June 19, 1990.

Defendant also argues that he was not given the benefit of USSG § 2K2.4 (as amended by Amendment 599), which clarified the circumstances when a weapons enhancement cannot be applied to an offense sentenced in conjunction with a conviction under 8 U.S.C. § 924(c). This argument is factually incorrect, as the PSR specifically relied on § 2K2.4 and found that a weapon enhancement could *not* be applied in calculating the guideline range for the drug offenses. More importantly, although the PSR calculated a guideline range of 360 months to life imprisonment, defendant's sentence was not based on the guideline calculation but on the mandatory minimum sentences required by statute.

Finally, defendant asserts what appears to be a *Booker* challenge, arguing both that the government should have been required to prove the prior convictions beyond a reasonable doubt, and that he is entitled to resentencing under a discretionary non-mandatory sentencing scheme that could take into account the defendant's age and infirmity. Because no *Booker* objection was raised at the time of sentencing, our review is for plain error.

Defendant cannot demonstrate a Sixth Amendment violation because, as the Supreme Court reaffirmed in *Booker*, the fact of a prior conviction is excepted from the factfinding requirements of the Sixth Amendment. *United States v. Bradley*, 400 F.3d 459, 462 (6th Cir.), *cert. denied*, 126 S. Ct. 145 (2005); *United States v. Booker*, 543 U.S. 220, 244 (2005) ("Accordingly, we reaffirm our holding in *Apprendi*[*v. New Jersey*, 530 U.S. 466, 490 (2000)]: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). In addition, we have recognized a second kind of *Booker* error when a defendant is sentenced under the erroneous impression that the guidelines were mandatory. *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). However, remand is not required by *Booker* when the defendant has been sentenced to a statutory mandatory minimum sentence. *United States v. Smith*, 419 F.3d 521, 531-32 (6th Cir. 2005) (no remand where defendant sentenced to mandatory minimum under § 841(b)(1)(A)), *cert. denied*, 126 S. Ct. 1110 (2006); *United States v. Whitehead*, 415 F.3d 583, 590 (6th Cir. 2005) (remand not necessary where defendant sentenced to a five-year mandatory minimum sentence under § 924(c)(1)(A)).

**AFFIRMED**.