NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0394n.06
Filed: June 14, 2007

No. 06-6238

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ADAM R. LEKE. | ) | WESTERN DISTRICT OF TENNESSEE, |
| | ) | EASTERN DIVISION |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**Before: Moore and Griffin, Circuit Judges; McKinley, District Judge.**[*]

**McKinley, District Judge.** Defendant-Appellant Adam Leke appeals his jury conviction

and final judgment for one count of conspiracy in violation of 18 U.S.C. § 371; one count of aiding

and abetting embezzlement in violation of 18 U.S.C. § 656 and 18 U.S.C. § 2; and one count of

aiding and abetting bank robbery in violation of 18 U.S.C. § 2113(b) and 18 U.S.C. § 2. Leke was

indicted in January 2006 after he and a co-conspirator allegedly took approximately $40,000.00

from the ATM located at the bank where Leke worked. A jury convicted Leke on June 12, 2006 and

the United States District Court for the Western District of Tennessee sentenced Leke to fifteen

---

[*]The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western
District of Kentucky, sitting by designation.

months imprisonment on each count, followed by three years supervised release and ordered $37,570.00 restitution to be paid jointly and severally with his co-conspirator who pled guilty. On appeal, the Defendant argues that the district court erred in denying his motion for acquittal as to all three counts because the evidence presented by the Government was insufficient to support the convictions. The Defendant also argues that his conviction on Count Three was in error because the indictment did not allege whether the amount of money stolen exceeded $1,000 - an essential element of the crime of bank larceny. Because there is no merit to Leke's arguments, we AFFIRM his conviction.

## I. BACKGROUND

In the early morning of December 2, 2006, nearly $40,000.00 was stolen from an ATM located at a branch of Regions Bank in Trenton, Tennessee. Five individuals worked at this branch - Defendant Adam Leke, Shawn Howard, Patsy Hickerson, Louise Prince, and Sheila Lewis. Once the bank became aware of the theft, it sent two security officers - Scott Coggins and Ronnie Gross - to investigate. Shawn Howard, Patsy Hickerson, Scott Coggins, and Ronnie Gross were the key Government witnesses at Leke's trial.

Shawn Howard testified that he and Defendant Leke worked as tellers at the branch of Regions Bank from which the money had been stolen. He stated that on December 1, 2005, he and Leke began their work duties as usual. Between 10:00 and 11:30 a.m., they went to the ATM, where they serviced the machine and replenished it by placing about $40,000.00 into the machine. Howard testified that he and Leke usually performed these duties together, but that if one was absent, the other did them alone. After they serviced the machine, Howard left for lunch. He testified that when

he returned, he learned that the Defendant had been out to the ATM alone to fix a deposit printer error.  The day then continued as usual. Howard testified that he left work between 3:00 and 4:00 p.m., went to his night classes around 6:00 p.m., and then returned to his home for the night around 9:00 p.m. His wife and his mother-in-law spent the night there as well.  He went to work as usual the next morning. When he went out to balance the ATM, however, both doors swung open, and the cassettes containing the money in the machine were missing. When bank officials arrived to investigate, Howard told them that he believed it had to be an inside-job because "there were no marks in the outside of the ATM and the locks weren't damaged."Howard told the bank officials that he suspected the Defendant.

Howard further testified that accessing the ATM at the bank required both a key and a combination and that it only took between thirty and forty-five seconds to unlock the safe by turning the key and performing the combination. Of the five employees, only he, Sheila Lewis, and the Defendant knew the combination to the ATM, but he believed that it was written down somewhere at the bank. The key was kept in an unlocked drawer in the bank. To Howard's knowledge, the combination had never been changed since he had begun working at the bank in September 2004. Howard also testified that if the ATM's door was ever left unlocked, a keypad inside the bank would so indicate.

Finally, Howard testified that the Defendant told his co- workers at the bank that he planned to quit his job in January and return to Phoenix, where he had once lived, and that the Defendant sometimes discussed his financial problems.

At trial, Shawn Howard's wife testified that on December 1, 2005, Howard left work to go

to school and then returned to their home between 8 p.m. and 9 p.m. and did not leave again until he went to work the next morning.

Patsy Hickerson, the supervisory teller at the bank, also testified at trial. She told the jury that on December 1, 2006, she was at work with Shawn Howard, Louise Prince, and the Defendant. Sheila Lewis was out that day having a tooth pulled. Hickerson testified that she filled the cassettes up with money for Howard and the Defendant to put in the ATM. She noted that she never took the money to the ATM herself because she was too short to service the machine. She then told the jury that when Howard was at lunch that day, the Defendant went out to the ATM alone to replace a printer ribbon. Hickerson then testified that the next morning, someone at the ATM security office called to alert them that something was wrong with the ATM. Shawn Howard went to see what was wrong and when he returned he said that the four cassettes containing all the money in the ATM were missing.

The next witness at trial was Scott Coggins, a security officer for Regions Bank. Coggins conducted the internal investigation for Regions Bank concerning the burglary of the ATM machine. He testified that he learned of the burglary when Shawn Howard called him and told him that customers were denied transactions because the ATM was empty and that when he checked the machine, the money cassettes were missing. When he arrived at the bank to inspect the ATM, he observed that there were "no tool marks, no pry marks, no cut marks....no damage to the machine whatsoever" and concluded that it was an inside job. He then testified that he learned that only three individuals had access to the ATM combination - Patsy Hickerson, Shawn Howard, and the Defendant.

Coggins first interviewed Shawn Howard whom he concluded was honest, forthright, and "gave no appearance of deception." He then interviewed Patsy Hickerson who told him that she never performed maintenance on the ATM because she was too short. He then interviewed the Defendant and knew "within five minutes...there was no doubt in [his] mind that he was involved" because his statements were not "jibing" and "his mannerisms showed deception." Coggins and his partner notified law enforcement and relayed to them the results of their investigation. Based on that information, the officers detained the Defendant as a suspect in the case.

Coggins also testified that their computers revealed that the ATM was broken into at 1:43 a.m. on December 2nd. The Defendant told Coggins that he was at Andrew Ward's house from 10 p.m. that evening until 7 a.m. the next morning.

Scott Coggins' partner, Ronnie Gross, also testified at trial. Gross was also a security officer with Regions Bank and conducted the initial internal investigation into the ATM incident with Scott Coggins. Like Coggins, he testified that his investigation revealed that 1) the ATM had not been physically broken into; and 2) only three people - Shawn Howard, Patsy Hickerson, and the Defendant- knew the combination to the ATM safe. He also testified that the ATM's security alarm went off at about 1:30 a.m. on the morning of December 2nd; that a security camera had been turned so that it would be out of focus; and that the security camera showed that the money was taken from the ATM in fifty-one seconds.

During the interview of the Defendant, the Defendant gave Gross the names of two individuals he believed could have committed the theft. The Defendant told Gross the individuals probably split the money. When Gross asked the Defendant what these individuals may have done

with the cassettes the money was in, he responded that most criminals discard things in "the bottoms." The Defendant then agreed to take the investigators to "the bottoms" so they could look for the cassettes. The Defendant told them there were three locations the cassettes could be. The Defendant took them to the first location - a creek - where they looked for 15 or 20 minutes. He then took them to a second location, where the investigators found three of the cassettes. They were between eight and ten miles from the bank branch where the ATM was located.

Soon after this, the investigators allowed the Defendant to speak briefly with his girlfriend. When she left, the Defendant told the investigators, "I think I've hurt myself." The Defendant then said he was finished talking with the investigators.

The Government's final witness was Andrew Ward, Leke's co-conspirator who pled guilty. At the outset, Ward admitted that he had a prior record for theft of property and burglary. He also testified that he had entered a guilty plea in this case for conspiracy and that he had an agreement with the Government in which he would get less time for his crime if he told the truth.

Ward testified that he and the Defendant were good friends and that they had grown up together. He said the Defendant came up with the plan and told him that he had left the doors unlocked on the ATM machine. He said the Defendant explained to him how to open the machine to get the money and how to avoid the security cameras. He testified that he had never worked at a bank and did not know anything about how ATM machines worked. He testified that after he removed the money from the ATM, he and the Defendant drove to "the bottoms" to dispose of the cassettes. Soon thereafter, Ward bought a new Ford Explorer for his girlfriend. He paid the $2,000.00 down payment in twenty dollar bills. When he learned from the Defendant that the police had found

the cassettes, he went on a "shopping spree." By the time the FBI interviewed him, he only had $8500.00 left, which he gave to them.

From the record, it appears that the only defense witness at trial was the Defendant's former girlfriend, now wife, Tamaba Leke. She testified that she and the Defendant had a number of twenty dollar bills because they had each taken out $300.00 loans from Cash Express on December 15th. The receipts from Cash Express were entered into evidence**.**

At the conclusion of the trial, the jury found the Defendant guilty of conspiracy, embezzlement, and bank larceny.

## II. ANALYSIS

On appeal, we must decide 1) whether the evidence was sufficient to uphold Leke's conviction on all counts; and 2) whether the indictment was sufficient, as to the count involving bank larceny, even though it failed to allege a key element of the crime.

## A. Sufficiency of the Evidence

A challenge to the sufficiency of the evidence on appeal is tested by viewing the evidence in a light most favorable to the prosecution and determining whether any rational trier of fact could find, beyond a reasonable doubt, the essential elements of the offense. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000). Our standard of review presents a defendant making such a challenge with a very heavy burden. See, e.g., *United States v. Wagner*, 382 F.3d 598, 610 (6th Cir. 2004). In considering the evidence, the appellate court allows the Government the benefit of all reasonable inferences and refrains from independently judging the weight of the evidence, evaluating witness credibility, or displacing the jury's judgment

with its own. *Id*. (citing *United States v. Chavis*, 296 F.3d 450, 455 (6ᵗʰ Cir. 2002)).

The court will reverse a conviction only if it is not supported by substantial and competent evidence. *United States v. Beddow*, 957 F.2d 1330, 1334 (6ᵗʰ Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *U.S. v. Orrico*, 599 F.2d 113, 117 (6ᵗʰ Cir. 1979). Further, circumstantial evidence and direct evidence should be accorded the same weight and "the uncorroborated testimony of an accomplice may support a conviction under federal law." *United States v. Frost*, 914 F.2d. 756, 762 (6ᵗʰ Cir. 1990) (quoting *United States v. Gallo*, 763 F.2d 1504, 1518 (6ᵗʰ Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986).

## 1. Count One: Conspiracy

In order to convict a defendant of conspiracy, the jury must find beyond a reasonable doubt:

1) that the conspiracy described in the indictment was willfully formed and existing at the time alleged;

2) that the accused willfully became a member of the conspiracy;

3) that one of the conspirators thereafter knowingly committed at least one of the overt acts alleged in the indictment, at or about the time and place alleged; and

4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.

*United States v. Poulos*, 895 F.2d 1113, 1117 (6ᵗʰ Cir. 1990). The existence of a criminal conspiracy need not be proven by direct evidence, a common plan may be inferred from circumstantial evidence.

*Id*.

Here, the Defendant argues that the Government did not meet its burden of proving beyond a reasonable doubt that a conspiracy existed between the Defendant and Andrew Ward. The Defendant argues that the only evidence presented to support the existence of this conspiracy was the testimony of Ward, who was "expecting leniency from the government in exchange for his testimony" against the Defendant. (Defendant-Appellant's Brief, p. 28). However, as the Supreme Court has stated, "[i]t is for [jurors] and not for appellate courts, to say that a particular witness spoke the truth or fabricated a cock-and-bull story." *United States v. Bailey*, 444 U.S. 394, 414-415 (1980)).

Based on the testimony of Ward, the jury could properly have found the existence of an agreement and the required overt act. It was reasonable for the jury to accept Ward's version of the events, especially since the Government also presented corroborating evidence that the Defendant was the last employee to access the ATM; that he discussed his financial problems with his co-workers; and that he told them he planned to quit work soon. Furthermore, the Defendant took investigators to the exact location of the discarded ATM money cassettes. Accordingly, we hold that there was sufficient evidence upon which a reasonable jury could have found that the Defendant conspired with Andrew Ward to steal money from the ATM.

**2. Count Two: Embezzlement by a Bank Employee**

As to this Count, the Defendant-Appellant argues that he was convicted of embezzlement pursuant to 18 U.S.C. § 656 based solely on the conflicting testimony of the Government's witnesses. For example, he argues that there was conflicting testimony as to who exactly in the bank

knew the ATM's combination and as to how the theft was initially discovered. However, "[a]ttacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (quoting *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991). In assessing the sufficiency of the evidence, "we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *Paige*, 470 F.3d at 608 (quoting *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994)). "[W]e draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Paige*, 470 F.3d at 608 (quoting *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001)).

Thus, despite any apparent inconsistencies in the testimony, there is substantial evidence from which a rational trier of fact could find, beyond a reasonable doubt, that the Defendant knowingly deprived the bank of possession, control, or use of its funds.

### 3. Count Three: Bank Larceny

For bank larceny, under 18 U.S.C. § 2113(b), the two key elements which the Government must prove beyond a reasonable doubt are:

1) the carrying away of bank property or money exceeding $1,000; and

2) the specific intent to steal.

*United States v. Marshall*, 248 F.3d 525, 536 (6th Cir. 2001).

The Defendant-Appellant argues that there was insufficient evidence presented at trial to support a conviction of bank larceny. Specifically, the Defendant-Appellant argues that this case is unlike *United States v. Marshall*, where the Sixth Circuit held that a conviction of bank larceny was

supported by evidence that 1) the defendant had been experiencing financial difficulties; 2) had access to the money and the opportunity to steal; and 3) his wealth suddenly increased immediately after the larceny. 248 F.3d 525, 535 (6th Cir. 2001). The Defendant-Appellant argues that in his case there is no physical evidence which connects him to the crime and no evidence that he experienced sudden, unexplained wealth.

However, the circumstantial evidence in this case was substantial. Testimony revealed that there were no signs of a forced entry into the ATM, suggesting an inside job; the ATM had just been filled with $40, 000.00; the Defendant-Appellant told investigators he was with co-conspirator Andrew Ward on the morning of the crime; Ward had unexplained wealth after the crime; and the Defendant took investigators to the discarded ATM money cassettes. Further, the *Marshall* court specifically recognized that "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." 248 F.3d 525, 536 (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)).

Accordingly, we hold there was sufficient evidence upon which a reasonable jury could have found the Defendant guilty of bank larceny.

**B. The Indictment**

The Defendant-Appellant also argues that his conviction as to this crime of bank larceny was error because the indictment did not allege that the sum carried away exceeded $1,000 - an essential element of the crime.

Importantly, however, when a challenge to an indictment is first raised on appeal, the indictment is construed liberally in favor of sufficiency and the Defendant must show prejudice

before reversal. *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999). Unless the Defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only after conviction unless the indictment cannot within reason be construed to charge a crime. *Id.* Further, the Sixth Circuit has held that citation to the appropriate statutory section is sufficient to put the Defendant on notice of the charges against him. *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992).

Here, the indictment cited the correct statute, charged that the Defendant carried away "money," and the Defendant-Appellant has made no argument that he was prejudiced by the omission. Accordingly, we hold that the indictment was sufficient.

### III. CONCLUSION

In sum, all of Leke's claims fail. First, the evidence presented at trial was sufficient to allow a reasonable trier of fact to find the essential elements of each crime for which Leke was convicted. Second, the indictment was sufficient, even though it failed to allege that the amount involved in the crime exceeded $1000, because the Defendant did not show prejudice. Therefore, we AFFIRM the judgment of the district court.