**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0194n.06

**No. 08-4247**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Mar 25, 2010**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| RASHIDD E. DOUGLAS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: KEITH, CLAY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Rashidd E. Douglas appeals his jury conviction for being a felon in possession of a firearm and/or ammunition, in violation of 18 U.S.C. § 922(g)(1). He requests that we vacate his conviction because (1) the evidence was allegedly insufficient to support the jury's verdict, and (2) the district court "misled the jury" and "prejudiced" him by instructing the jury on both actual and constructive possession when it should have limited the government to one theory of possession. We disagree and affirm.

I.

On February 13, 2008, a grand jury returned a one-count indictment charging Douglas with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

Following an evidentiary hearing, the district court denied Douglas's motion to suppress evidence, including statements.

The evidence at the April 29-30, 2008, trial in the United States District Court for the Northern District of Ohio was as follows. On January 24, 2008, an Akron, Ohio, municipal court judge authorized a search warrant for the home of Kelly Kelker following her alleged sales of ecstacy at the residence. The next morning, Akron Police Narcotics Detective Glenn Payne stopped Kelker's car. Kelker gave Detective Payne the key to her home and, in response to his questioning, told Detective Payne that "her boyfriend was present in the house and there was a loaded gun on top of the refrigerator."

During the search of Kelker's residence, police found a Para Ordnance .45 caliber pistol with an obliterated serial number and loaded with thirteen rounds of ammunition on top of the refrigerator, approximately five pounds of marijuana, $31,000 in cash, and Douglas, who was a convicted felon. According to the trial testimony of Payne and Akron Police Narcotics Detective James Palmer, Douglas told the detectives that both the gun and the marijuana belonged to him. Douglas also allegedly informed Detectives Payne and Palmer that thirty pounds of marijuana and $10,000 in cash were stolen previously from the residence.

Douglas testified on his own behalf. He made the following admissions: the marijuana was his; the house had been robbed of marijuana and money; he had multiple convictions for selling marijuana; he was on probation currently; he was unemployed but owned the approximately $31,000 found in the house; and he was obtaining five pounds of marijuana each week on consignment from

Jamaican drug dealers and selling it for $1,000 per pound prior to his arrest. However, Douglas repeatedly denied admitting to the officers that the pistol was his; instead, he allegedly told the detectives he did not know there was a weapon in the home and had never seen the firearm before it was recovered. This in spite of the fact that on the day of the search he had stayed in the house overnight and had free reign of the house, presumably including the kitchen.

The district court denied Douglas's motion for judgment of acquittal based upon the sufficiency of the evidence under Federal Rule of Civil Procedure 29. Thereafter, the jury found Douglas guilty, and the district court sentenced him to 78 months of imprisonment to run concurrently with a state sentence imposed by the Summit County Court of Common Pleas. Douglas timely appeals.

## II.

Douglas argues that the evidence was insufficient to support his conviction for being a felon in possession of a firearm and/or ammunition. Although he acknowledges that "law enforcement witnesses were unwavering [in their testimony] that [he] had a firearm," Douglas counters that "the defense proof contradicted" their testimony. Specifically, Douglas argues that officers failed to find and preserve any fingerprints on the weapon and did not record his statements. He also complains that the firearm charge was in retaliation for his decision not to cooperate with law enforcement following his release on bond for possession of marijuana. Finally, Douglas asserts that the evidence showed that Kelker owned and possessed the firearm, as evidenced by Kelker's statement to

Detective Payne that a gun could be found on top of the refrigerator in her home – the precise location where the police retrieved it.

We review the district court's denial of Douglas's motion for judgment of acquittal de novo. *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007). However, "[a] defendant mounting a sufficiency challenge bears a heavy burden, because he must show that, 'after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]'" *United States v. Kimbrel*, 532 F.3d 461, 465 (6th Cir. 2008) (internal citation and quotation marks omitted). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (citation and internal quotation marks omitted).

To prove a violation of 18 U.S.C. § 922(g)(1), the government had to establish: (1) that Douglas was a convicted felon; (2) that he knowingly possessed a firearm or ammunition; and (3) the firearm or ammunition had traveled in or affected interstate commerce. 18 U.S.C. § 922(g)(1); *United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005). Because Douglas stipulated to the first element and does not dispute the third, the only controverted element is whether Douglas possessed the firearm and/or ammunition. Douglas's sufficiency challenge to this element fails.

Douglas does not dispute that he was present at Kelker's home when the firearm and ammunition were found. Although, at trial, Douglas denied telling Detectives Payne and Palmer that the pistol belonged to him, both detectives testified to the contrary. When determining whether there

was sufficient evidence to sustain Douglas's conviction, "we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury"; rather, "[w]e draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (citations and internal quotation marks omitted). Douglas's attack on the detectives' credibility is a "simple challenge[] to the quality of the government's evidence and not the sufficiency of the evidence." *Id.* (citation and internal quotation marks omitted).

Moreover, each detective's testimony was corroborated, not only by the other's, but also by Douglas's undisputed admissions that he owned the multiple pounds of marijuana found inside the home and was selling marijuana at or near the time of his arrest. Viewing this evidence in the light most favorable to the prosecution, the jury was well within its province to believe the detectives' testimony regarding ownership or possession of the pistol over Douglas's account. If believed, Douglas's confession "is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (citation and internal quotation marks omitted).

Based upon this evidence, a rational trier of fact could have found beyond a reasonable doubt that Douglas possessed the firearm and/or ammunition. Therefore, the district court did not err in denying Douglas's motion for judgment of acquittal.

III.

Douglas also argues that the district court erred in instructing the jury, allegedly over his objection, on two types of possession – actual and constructive – rather than limiting the government to one theory of possession.[1] According to Douglas, the "instruction was improper in that it misled the jury" and "prejudiced" him because a person cannot, "by definition," have both actual and constructive possession. Douglas maintains that the government's sole theory was that he had actual possession of the firearm by virtue of his alleged ownership of it, and, accordingly, the jury should have been given only the actual possession instruction.

As a preliminary matter, Douglas failed to properly preserve for our review the district court's jury instruction on constructive possession. At trial, Douglas argued that the district court *should* instruct the jury on constructive possession; he objected only to instructions on actual and joint possession:

> [DEFENSE COUNSEL]: I would object to the addition of the idea of joint possession. I don't believe the government has argued joint possession. . . . I think that the joint possession does not meet the evidence in this case. . . . I don't believe the government has argued actual possession either. *They more argued constructive possession*, and I'm not sure that the Court should instruct on both.
>
> THE COURT: So your belief is that we should not instruct on either actual possession or joint possession?
>
> [DEFENSE COUNSEL]: That's correct.

---

[1]Although the government argues in support of the district court's instruction on the additional theory of joint possession, Douglas concedes that the joint possession instruction was proper because Kelker owned the residence in which the firearm and ammunition were found.

(Emphasis added.) Thus, Douglas's position below, in which he suggested that a constructive

possession instruction was appropriate, but actual and joint possession instructions were improper,

differs from his posture in this appeal.

Because Douglas failed to make a proper objection at trial to the district court's jury

instruction on constructive possession, we will not reverse his conviction unless the instructions

amounted to plain error. FED. R. CRIM. P. 30(d) & 52(b); *United States v. Newsom*, 452 F.3d 593,

605 (6th Cir. 2006). "In the context of challenges to jury instructions, plain error requires a finding

that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave

miscarriage of justice." *Newsom*, 452 F.3d at 605 (internal quotation marks, citation, and alteration

omitted).[2]

"It is of course well established that an instruction should not be given if it lacks evidentiary

support or is based upon mere suspicion or speculation." *United States v. James*, 819 F.2d 674, 675

(6th Cir. 1987) (reversing the defendant's conviction for possession of a firearm by a convicted felon

where the government conceded that the defendant had actual possession of the firearm only, but the

---

[2]Otherwise, we review properly preserved errors in jury instructions for an abuse of discretion. *United States v. Carson*, 560 F.3d 566, 578 (6th Cir. 2009). An abuse of discretion exists when we are left with "a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Johnson*, 569 F.3d 619, 623 (6th Cir. 2009). "[J]ury instructions [are reviewed] as a whole to determine if they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision[,] and [we] will reverse a jury verdict on account of instructional error only in situations where the instruction, viewed as a whole is confusing, misleading, and prejudicial." *Carson*, 560 F.3d at 578. Under either the plain error or abuse of discretion standard of review, the challenged jury instructions did not constitute reversible error.

district court gave constructive possession instruction as well) (citations and internal quotation marks omitted). Moreover, we have cautioned against the use of "boilerplate instructions" insufficiently tailored "to the facts and theories of the specific case being tried." *United States v. Wolak*, 923 F.2d 1193, 1198 (6th Cir. 1991) (admonishing the district court for giving instructions on joint and constructive possession where only actual possession was at issue in the case); *see also* Sixth Circuit Criminal Pattern Jury Instructions Use Note to § 2.10A ("Actual Possession") ("This instruction should be given if the government's only theory of possession is actual possession."). However, the opposite is also true – the district court may reasonably give instructions on multiple theories of possession if they are supported by the evidence. *See* Sixth Circuit Criminal Pattern Jury Instructions Use Note to § 2.10 ("Actual and Constructive Possession") ("If the government's theory of possession is that it was actual or constructive, give all paragraphs of this instruction.").

"Possession may be either actual or constructive and it need not be exclusive but may be joint." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973). "Actual possession requires that the defendant have immediate possession or control" over the firearm or ammunition. *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (citation and internal quotation marks omitted). "[C]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007) (citation and internal quotation marks omitted). "Presence *alone* near a gun . . . does not show the requisite knowledge, power, or intention to exercise control over the gun to prove constructive

possession." *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc) (citation and internal quotation marks omitted). "Other incriminating evidence must supplement a defendant's proximity to a firearm in order to tip the scale in favor of constructive possession." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). "Consequently, evidence of some other factor – including connection with a gun, proof of motive, . . . or a statement indicating involvement in an enterprise – coupled with proximity may suffice." *Id*. (citation and internal quotation marks omitted).

In support of his argument that a constructive possession instruction was not warranted, Douglas relies upon a single, unpublished decision from this court. *See United States v. Bowman*, 126 F. App'x 251 (6th Cir. 2005) (unpublished). *Bowman*, however, is not precedentially binding,[3] and Douglas misrepresents our holding in *Bowman* when he asserts that we "vacated the verdict and remanded the case for a new trial" because the trial court instructed the jury on both actual and constructive possession. In fact, the conviction was *affirmed*, not vacated, and we remanded the matter for resentencing, not a new trial. *Id*. at 255.

In *Bowman*, the district court instructed the jury on actual and constructive possession of a firearm even though the evidence showed the defendant had actual possession of it only. *Id*. at 254-55. Nevertheless, we held that the constructive possession instruction did not influence the verdict and affect the defendant's substantial rights under a plain error analysis because "[n]either Bowman

---

[3]*Thompson v. N. Am. Stainless, LP*, 567 F.3d 804, 809 n.2 (6th Cir. 2009) (en banc); *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

nor the government suggested that Bowman had constructive possession of the gun[,]" which a police officer testified he saw Bowman throw to the ground while running away from the officer. *Id*.

Bowman is distinguishable from the present case. Unlike the defendant in *Bowman*, it is undisputed that Douglas was not holding the pistol, and it was not within his immediate reach when officers found him. Instead, the gun was in a different room – the kitchen on top of the refrigerator – of a house owned by Kelker, Douglas's girlfriend. Not only was Douglas in close proximity to the firearm when police entered the home, but "other incriminating evidence . . . tip[ped] the scale in favor of [Douglas's] constructive possession" of the firearm. *Campbell*, 549 F.3d at 374. This evidence included Douglas's admission at trial that the multiple pounds of marijuana belonged to him, that thirty pounds of his marijuana and $10,000 had been stolen from the home during a previous incident, and that he had visited the home overnight and had free reign of the home while the gun was stored openly in the kitchen on top of the refrigerator. The totality of these facts permitted a beyond-a-reasonable-doubt-inference that Douglas "ha[d] the power and the intention at a given time to exercise dominion and control over [the firearm and/or ammunition], either directly or through" Kelker, who informed the police of the pistol's location during their stop of her vehicle. *Gardner*, 488 F.3d at 713 (citation and internal quotation marks omitted).

Although the jury instructions on possession were imperfect in that they could have been more precisely tailored to the facts, they do not provide grounds for reversing Douglas's conviction on these facts. We also note that the district court properly cautioned the jury that "just being present

with others who had possession is not enough to convict" and clearly apprised it of Douglas's

defense: "The defendant denies that the firearm and/or ammunition in question belonged to him and

denies that he possessed them at any time."

IV.

For these reasons, we affirm the judgment of the district court.