NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0193n.06

Case No. 24-5283

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 10, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| MARK ELLIS, | ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: CLAY, THAPAR, and READLER, Circuit Judges.

THAPAR, Circuit Judge. A jury found Mark Ellis guilty of possessing fentanyl with the intent to distribute and possessing a firearm in furtherance of a drug trafficking crime, among other offenses. He now argues that there wasn't enough evidence to support his conviction and that his sentence was procedurally unreasonable. Because neither is true, we affirm.

I.

This case arises out of a drug sale in Clarksville, Tennessee. A confidential informant working with the Clarksville Police Department arranged to buy one gram of what she thought was heroin from Mark Ellis. To complete the transaction, the informant scheduled a meeting with Ellis (and his wife) in a car parked outside his grandparents' home. Once she arrived, the informant climbed into Ellis's car. But the drugs weren't there: Ellis explained that he had "got some in the house." R. 201, Pg. ID 701. So Ellis's wife, Yennifer Angeles, got out of the car and went inside

the home, returning a few minutes later. After she climbed back in the car, Ellis handed drugs to the informant.

As the informant left Ellis's car, she saw that Ellis had a gun. So she asked Ellis about it. The two had a brief conversation about the weapon and then the informant returned to the police. She gave the police what she purchased, which tests revealed was a mixture of heroin and fentanyl.

Meanwhile, the police were concerned with Ellis's comments that he had drugs "inside" his grandparents' house. R. 205, Pg. ID 1016. So they got a search warrant to see if more drugs were in the house. When they arrived and conducted the search, they found a set of scales, a jacket that appeared in some of Ellis's social media photos, and 445 grams of a drug mixture containing fentanyl sitting alongside mail addressed to Ellis.

The police arrested Ellis and took him to county jail. After he was booked, Ellis called his wife, Angeles. On that call, Ellis asked her if she had moved "everything else," including "the [stuff] that make the money," and Angeles said that she had. R. 201, Pg. ID 701.

That phone call tipped the police off that there could be drugs at the apartment Angeles shared with Ellis. So the police searched it. There, officers found two drug mixtures containing fentanyl, weighing roughly 40 grams combined, in a sunglass case sitting next to a digital scale.

A federal grand jury charged Ellis with six counts. The first count charged him with conspiracy to distribute and possess with intent to distribute a fentanyl mixture in violation of 21 U.S.C. § 846. The second count charged him with possession with intent to distribute 400 grams or more of a fentanyl mixture in violation of 21 U.S.C. § 841(a)(1). The third count charged him with distributing and possessing with intent to distribute a fentanyl mixture in violation of 21 U.S.C. § 841(a)(1). The fourth and fifth charged him with possessing a firearm in furtherance of a drug trafficking crime and being a felon in possession of a firearm in violation of

18 U.S.C. §§ 922(g)(1), 924, and 924(c)(1). The sixth charged him with possessing with the intent to distribute 40 grams or more of a fentanyl mixture in violation of 21 U.S.C. § 841(a)(1).

Ellis went to trial and was convicted of all six counts. He now appeals.

## II.

Ellis brings two challenges on appeal. First, he says there wasn't enough evidence for the jury to find him guilty of possessing a firearm in furtherance of drug trafficking. Second, he claims the district court's sentence was procedurally unreasonable.

## A.

In a sufficiency of the evidence challenge, courts consider whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In doing so, courts view the evidence in the light most favorable to the prosecution. *Id.* Circumstantial evidence alone can be enough to support a conviction. *United States v. Tragas*, 727 F.3d 610, 617 (6th Cir. 2013).

Ellis argues that there wasn't enough evidence to support his conviction for possessing a firearm "in furtherance of" a drug trafficking offense. He claims that he didn't possess the gun "in furtherance" of the crime—rather, it was a coincidence that he had the gun while committing the crime.

A defendant possesses a firearm "in furtherance of" a drug trafficking offense if the gun "advance[s], promote[s], or facilitate[s] the crime." *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006) (internal quotation marks omitted). A defendant must intend to possess the gun for that purpose. *United States v. Maya*, 966 F.3d 493, 500 (6th Cir. 2020).

The government can prove that intent through circumstantial evidence, such that there's a "specific nexus between the gun and the crime charged." *United States v. Mackey*, 265 F.3d 457,

462 (6th Cir. 2001). Courts evaluating whether a nexus exists typically look at various factors: (1) whether the gun is "strategically located so that it is quickly and easily available for use;" (2) "whether the gun was loaded;" (3) "the type of weapon;" (4) "the legality of its possession;" (5) "the type of drug activity conducted;" and (6) "the time and circumstances under which the firearm was found." *Id.* These considerations, called the *Mackey* factors, are not exhaustive. *Id.* Instead, they're part of a "holistic analysis" of the circumstances of any given case. *Maya*, 966 F.3d at 501 (internal quotation marks omitted).

Here, there was enough evidence to support Ellis's conviction. Almost all the *Mackey* factors indicate there was a nexus between the gun and the sale of fentanyl, and a holistic analysis of the sale reveals Ellis used the gun in furtherance of the sale.

Start with whether the gun was "strategically located." Here, jurors saw a video that showed Ellis had a gun near him during the transaction. They heard the confidential informant and Ellis talk about the gun, with Ellis confirming that it was "a 9 [millimeter pistol]." R. 205, Pg. ID 1042–43. In this way, the gun was strategically located during the transaction—indeed, so much so that the confidential informant noticed and discussed it with Ellis.

The gun was also likely loaded during the transaction. At trial, a federal agent testified that he found a loaded 9mm firearm in the same car a few hours after the sale. So the presence of a loaded gun in the same car, with the same caliber Ellis discussed just a few hours after the sale, is strong circumstantial evidence that the gun was loaded during the transaction.

Next, it was illegal for Ellis, a felon, to have the gun in the first place. As in *Mackey*, that suggests Ellis used the gun for an illegal purpose. *See* 265 F.3d at 462.

And the type of drug activity here was precisely the kind of activity where a dealer would want a firearm's protection. In hand-to-hand transactions, the possession of a gun is meaningful: those are the types of exchanges in which dealers most need a firearm. *See United States v. Maye*, 582 F.3d 622, 639 (6th Cir. 2009) (Batchelder, J., concurring in part and dissenting in part).

Finally, the time and circumstances in which the firearm was found also suggest that Ellis possessed the gun in furtherance of a drug trafficking crime. The circumstances at issue concern an individual engaged in the immediate sale of drugs from his car. And he had a gun visible during the sale, suggesting he was using the weapon for protection or to remind buyers that he was serious. Indeed, the informant commented on its presence. All told, the circumstances of this case—a drug sale with a gun—indicate that the firearm was used in furtherance of the drug trafficking offense.

In sum, it's no surprise that five of the six *Mackey* factors[1] confirm there's a close nexus between the firearm and sale of an illegal drug. Looking holistically, Ellis conducted a sale of a controlled substance with a loaded firearm close by and on full display—and, he spoke about the gun just after he handed the drugs to the confidential informant. That's strong evidence that Ellis intended to use the gun in furtherance of a drug trafficking offense. *See Maya*, 966 F.3d at 500. Thus, significant (and sufficient) evidence supported his conviction.

In response, Ellis makes several unconvincing arguments. The first is that the gun wasn't possessed "in furtherance" of the offense because it was, in effect, just sitting in the car. Thus, Ellis argues that his conduct isn't captured by the statute's plain text.

But Ellis's situation is a far cry from having a gun in the wrong place at the wrong time. Indeed, Ellis's gun was on full display and in reach during the drug transaction. It was not just

---

[1] The sixth *Mackey* factor, the type of weapon at issue, is inconclusive. Here, all we know about the firearm is that it is a 9mm handgun.

hanging above a mantle or stowed away in the trunk of a car, out of sight and out of mind. *Cf. Bailey v. United States*, 516 U.S. 137, 147 (1995); *Mackey*, 265 F.3d at 462. Rather, the jury heard evidence that the gun was loaded during a type of drug sale in which a gun is often useful. The gun showed Ellis meant business—and thus was possessed in furtherance of the drug sale. Therefore, it falls within the statute's sweep.

Second, Ellis claims the government made incorrect statements about the fentanyl that it recovered from his grandparents' home. The government said the fentanyl mixture was worth $50,000 as a means of arguing that Ellis was in control of the drugs and would not have left such a substantial amount in Angeles' sole control. But Ellis challenges that figure. He says that drug dealers sometimes give volume discounts—they sell larger volumes of drugs at lower prices per ounce than they charge for smaller quantities of drugs.

But this argument fails. For one, it has nothing to do with the sufficiency of the government's evidence. A sufficiency challenge considers whether the government's evidence was so deficient that the judge shouldn't have let the government's case go to a jury at all. *Musacchio v. United States*, 577 U.S. 237, 244 (2016). Ellis's argument, on the other hand, is instead about the prosecutor's comments at trial—not about whether there was enough evidence to convict in the first instance. What's more, it also ignores that the § 924(c) count, using a gun in furtherance of drug trafficking, concerned only Ellis's sale to the informant—not the quantity of drugs in his grandparents' home.

Thus, Ellis's sufficiency of the evidence challenge fails.

B.

Next, Ellis argues that his sentence is procedurally unreasonable. He says the district court didn't recognize it had discretion to depart from the Guidelines when there was little fentanyl in

the mixture of drugs at issue. But the district court did understand its discretion, and there was no procedural error.

1.

A sentence is procedurally unreasonable if the district court fails to calculate or improperly calculates the Guidelines range, treats the Guidelines as mandatory, glosses over the factors set out in § 3553(a), selects a sentence based on clearly erroneous facts, or fails to adequately explain the sentence it selects. *Gall v. United States*, 552 U.S. 38, 51 (2007). We usually review procedural reasonableness challenges like the one here for an abuse of discretion. *Id.*

But not when the defendant failed to object in the proceedings below. That's the case here—Ellis never suggested that the district court misunderstood its discretion to depart from the Guidelines. Instead, Ellis objected to the court's calculation of his base offense level. These are two distinct claims, and the new claim that Ellis appears to pursue on appeal wasn't preserved below. So we review only for plain error. *Cf. United States v. Simmons*, 587 F.3d 348, 358 & n.6 (6th Cir. 2009).

2.

The district court properly understood its discretion at sentencing. For example, the district court explained that it viewed the Guidelines as discretionary. The court noted that it was "guided by and advised by the guideline[s]." R. 202, Pg. ID 754. And it repeated that the Guidelines range was "advisory." *Id.* at Pg. ID 757. The court then carefully "balance[d] all the information" that was "before [it]," including the seriousness of the crimes, Ellis's criminal history, the need for the sentence imposed, protecting the public, and mitigating circumstances. *Id.* at Pg. ID 772–80. All told, the district court recognized its discretion and committed no error.

Ellis's arguments to the contrary are not convincing. Ellis's first argument concerns the calculation of his base offense level. Ellis possessed more than 400 grams of a mixture containing heroin and fentanyl. Under the Sentencing Guidelines, if Ellis were sentenced as if the mixture were all heroin, his base offense level would have been 26. But if the court found that there was fentanyl in the mixture, the base level would have been 30. Why? Because the Guidelines explain that if there is a "detectable amount" of fentanyl in a mixture, courts sentence the defendant as if the entire amount of the drugs is fentanyl. *See* U.S.S.G. § 2D1.1(c)(A) (2023); *United States v. Harris*, 774 F. App'x 937, 941 (6th Cir. 2019). Here, there was a detectable amount of fentanyl in the mixture. So the court used the recommended base level of 30.[2]

Ellis argues these facts are somehow relevant to the court's understanding of its own discretion to depart from the Guidelines. But they're not—the calculation of a base offense level and the court's understanding of its own authority are distinct claims. And here, the court correctly understood its authority.

Next, Ellis argues that the district court didn't consider policy arguments that the small amount of fentanyl meant that he deserved a light sentence. He says the failure to do so meant the district court didn't understand that it had discretion to deviate from the Guidelines.

But this counterargument fails. A district court doesn't have to "expressly mention a sentencing argument or alternative, so long as the record as a whole shows that it considered the issue." *United States v. Garner*, 769 F. App'x 313, 315 (6th Cir. 2019). Instead, the court must

---

[2] Below, Ellis argued that his base offense level should be 26 instead of 30. Ellis doesn't appear to renew this version of his argument here, as his briefing instead makes assertions about the offense level through the lens of the district court not understanding it had discretion to set a different sentence. But even if Ellis were to argue that the district court got the offense level wrong outside of any claim about the court's discretion, Ellis would still lose. As we've explained, the Guidelines set out that if there's a "detectable amount" of fentanyl in a mixture, a court can sentence a defendant as if the entire mixture was fentanyl. U.S.S.G. § 2D1.1(c)(A) (2023). And here, there was a detectable amount. Thus, the district court didn't misapply the Guidelines.

consider the § 3553(a) sentencing factors. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). The court did just that. And it considered Ellis's objections to the calculation of his base offense level. All told, there's ample evidence that the district court's sentence was procedurally reasonable.

Third, Ellis argues that the district court didn't consider that the fentanyl at issue had a low purity level, and that the purity levels differed across the various samples offered at trial.

But this point says nothing about the district court's understanding of its discretion. What's more, the district court did consider that the mixtures at issue had low levels of fentanyl. Thus, this argument fails.

Finally, Ellis appears to argue that the district court's pre-trial denial of his motion about trial testimony on the amount of fentanyl shows that the district court didn't understand it had discretion in sentencing Ellis.

This claim doesn't help Ellis, either. The court's denial of a pretrial motion has nothing to do with the court's sentencing procedures. And here, those procedures were sufficient: the record reflects the court's careful consideration of the relevant factors.

Thus, Ellis's procedural reasonableness claim fails.

\*     \*     \*

We affirm.